In the Marriage of Kathy JENDREAS, Appellant–Respondent,

v.

James JENDREAS, Appellee–Petitioner.

No. 45A03–9501–CV–17.

Court of Appeals of Indiana.

April 16, 1996.

Transfer Denied July 31, 1996.

Debra Lynch Dubovich, Levy & Dubovich, Highland, for Appellant.

James M. Kapitan, James A. Harris, Sachs & Hess, P.C., Hammond, for Appellee.

## OPINION

STATON, Judge.

Kathy Jendreas ("Kathy") appeals from the trial court's judgment dissolving her marriage to James Jendreas ("James"). In her appeal, Kathy presents four issues for our review which we reorder and restate as follows:

I. Whether the trial court's refusal to hear additional evidence following the submission of a custody evaluation report denied Kathy due process of law.

II. Whether the trial court erred in its property disposition by excluding James' disability pension as a marital asset.

III. Whether the trial court erred in its property disposition by including a lump sum social security disability payment as a marital asset.

IV. Whether the trial court erred in failing to consider certain social security disability payments when calculating Kathy's monthly child support obligation.

We affirm in part, reverse in part, and remand.

The pertinent facts reveal that Kathy and James were married on September 16, 1967. Three children were born to the marriage: Kelly Jendreas, born March 19, 1969; Jeff Jendreas, born May 6, 1972; and J.J., born February 22, 1982. The parties separated on April 12, 1991 and James filed a petition for dissolution of marriage on April 19, 1991.

During the course of the marriage, James was employed as a union carpenter until health problems rendered him totally and permanently disabled. James was approved for social security disability benefits and the family received a lump sum award. In addition, James receives monthly disability benefits of $1,176.00, as well as a monthly union pension of $1,634.83. Kathy was not employed outside the home during the marriage, but has been employed since the parties separated.

During the course of the dissolution proceedings, a custody dispute arose regarding J.J. The parties agreed to have clinical psy-

chologist, Dr. Gary M. Durak ("Durak"), perform a custody evaluation. Durak interviewed James, Kathy, and J.J. several times and in the fall of 1993, Durak recommended that Kathy and James share custody under a joint parenting agreement with J.J. residing with each parent one month at a time. This recommendation was adopted by the parties and approved by the trial court.

A final dissolution hearing was held on August 9, 1994. During the hearing, James testified that he, J.J., and Kathy met with Durak on August 4, 1994, and that the parties agreed that James should have full custody of J.J. Kathy denied that she agreed to this arrangement. Because Durak was unavailable to testify, the trial court indicated that it would rule on all pending issues except the custody matter, and ordered Durak to submit a report. On September 14, 1994, Durak submitted a letter to the court wherein he recommended that J.J. reside with James on a full-time basis. On October 12, 1994, Durak filed a follow-up letter wherein he indicated that upon reconsideration, he recommended that J.J. "continue to alternate residencies between Mr. and Ms. Jendreas on a monthly basis. That is, the plan that has been in effect, since the Fall of 1993, continue." Record, p. 696. Kathy then filed a motion with the court to conduct a hearing for the purpose of cross-examining Durak which the trial court denied.[1]

On December 15, 1994, the trial court entered its findings of facts, conclusions of law, and decree of dissolution. The trial court, *inter alia*, awarded James the care and custody of J.J. and Kathy was granted visitation rights in accordance with the visitation guidelines adopted by the Lake County Rules. The trial court also found that James was entitled to receive and use his disability check, and authorized him to use it for J.J.'s benefit. The court ordered Kathy to pay $30.00 per week in child support. The court then divided the rest of the marital property equally and expressly declined to deviate from the presumption that equal division of the property was just and reasonable. Kathy appeals this judgment.

## I.

### *Child Custody and Due Process*

Kathy contends that the trial court's custody determination violated her fundamental right to due process as a result of its refusal to conduct a hearing for the purpose of cross-examining Durak.

With respect to custody determinations, we presume the trial court reached the correct result, and we review its decision only for an abuse of discretion. This means we will disturb the trial court's order only if it is clearly against the logic and effect of the facts and circumstances before the trial court. *In re Marriage of Saunders,* 496 N.E.2d 419, 421 (Ind.Ct.App.1986).

Kathy contends that she was entitled to cross-examine Durak regarding the reports he filed with the court subsequent to the August 9, 1995 hearing as required by IND.CODE § 31-1-11.5-22 (Supp.1995). IC 31-1-11.5-22 provides, in pertinent part:

(a) In custody proceedings after evidence is submitted upon the petition, if a parent, or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. . . .

(b) . . . If the requirements of subsection (c) are fulfilled, the investigator's report may be received in evidence at the hearing, . . .

(c) The court shall mail the investigator's report to counsel and to any party not represented by counsel at least ten (10) days prior to the hearing. . . . Any party

---

1. In its order denying Kathy's request, the trial court stated:
    . . . The Court has reviewed the file and the pleadings, and finds that on August 9, 1994, evidence was concluded and both parties rested. The Court then asked Dr. Durak to issue a report since the parties ordered different interpretations of statements made by Dr. Durak at a meeting with the parties a few days prior to the hearing on August 9. Said report was requested by the Court to better evaluate the testimony of the parties at the August 9 hearing. This was the sole reason for requesting Dr. Durak to prepare a supplemental report. Accordingly, the Court finds that this case is concluded, and should not be reopened. Record, p. 237.

to the proceeding may call the investigator and any person whom he has consulted for cross-examination. No party may waive his right of cross-examination prior to the hearing.

■ Procedural due process must be provided to protect the substantive rights of the parties in child custody proceedings, and an opportunity to be heard is essential before a parent can be deprived of custody. *Van Etta v. Van Etta*, 583 N.E.2d 767, 768 (Ind. Ct.App.1991). Even where the technical requirements of the IC 31–1–11.5–22 are not met, when reports are considered by the trial court in making its determination, the parties should have the opportunity to examine their veracity and the probity of their conclusions. *Id.* (citing *In re Marriage of Larkin*, 462 N.E.2d 1338, 1342 (Ind.Ct.App.1984)). Once the court decides to order a study to aid in the custody determination, the court is obligated by due process to hold a further hearing. *Id.*

In *Van Etta*, the father filed a petition to modify custody and after a hearing, the court *sua sponte* ordered a home study by the county welfare department. *Van Etta, supra,* at 768. The report was filed with the court and without another hearing, the court granted custody to the father. Mother appealed, arguing that the trial court erred in considering the home study report without a hearing. *Id.* This court reversed, noting that even though the court ordered the report *sua sponte* and the technical requirements of IC 31–1–11.5–22 were not met, it could not tell to what extent the court based its judgment on the unchallenged report, making a hearing essential in order to protect the mother's due process rights. *Id.*

■ Similarly, although the technical requirements of IC 31–1–11.5–22 are not met here, its legislative intent remains clear; parties should have the opportunity to examine into the veracity and the support for any conclusions reached in investigative reports. *Larkin, supra,* at 1342. Here, Durak submitted two reports subsequent to the hearing which made different recommendations regarding the custody of J.J. The court then awarded James custody. In its findings, the trial court relied upon the September 14,

1994 letter, noting that Durak recommended J.J. live with his father on a full-time basis and that Durak "has established a pattern of consistently moving closer to the position of Mr. Jendreas on the custody issue." Record, p. 302. Yet, by denying Kathy's request for a hearing, the trial court precluded her from examining the veracity and probity of Durak's recommendations which the trial court expressly relied upon in reaching its conclusion. Due process requires otherwise. *Van Etta, supra; Larkin, supra.* Accordingly, we determine that a hearing subsequent to the submission of Durak's reports was essential to protect Kathy's due process rights and remand for further proceedings.

## II.

*Property Disposition—Disability Pension*

■ Kathy contends that the trial court erred by failing to consider James' union disability pension a marital asset subject to property distribution. In reviewing a trial court's division of property, we consider only the evidence favorable to the judgment, and will reverse only upon a showing of an abuse of discretion. *Fields v. Fields*, 625 N.E.2d 1266, 1267 (Ind.Ct.App.1993), *trans. denied.* The party challenging the trial court's division must overcome a strong presumption that the court complied with controlling statute. *Castaneda v. Castaneda*, 615 N.E.2d 467, 471 (Ind.Ct.App.1993).

Kathy argues that James' disability pension is marital property subject to equitable distribution. IND.CODE § 31–1–11.5–2(d) (1993) states that "property" subject to distribution in dissolution proceedings means all the assets of either party or both parties *including* a present right to withdraw pension or retirement benefits; or the right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested.

Kathy relies upon *Gnerlich v. Gnerlich*, 538 N.E.2d 285 (Ind.Ct.App.1989), *trans. denied,* to support her contention. In *Gnerlich,* this court determined that a disability pension was marital property subject to dis-

tribution because it was substantially similar to an ordinary retirement pension.[2]

However, in *Leisure v. Leisure*, 605 N.E.2d 755 (Ind.1993), the Indiana Supreme Court addressed *Gnerlich* and implicitly limited its application. In determining whether worker's compensation benefits were marital property, the court noted that in *Gnerlich*, the husband's pension was part of the marital pot because the husband became entitled to the benefits by making monthly contributions to an employer-sponsored program. *Leisure, supra,* at 758. In order for the husband to obtain policy coverage, the husband used marital assets, depriving the family of the present use of those funds. *Id.* (citing *Gnerlich, supra,* at 288). Therefore, the court concluded that because the husband paid a monthly amount to provide for that type of insurance against lost earnings and depleted marital assets, the disability pension in *Gnerlich* was marital property subject to distribution. *Id.*

The court then indicated that unlike a pension, which accrues during the time period a person works and returns to an employee an amount of money based upon the time he worked, worker's compensation benefits were not compensation for actual work performed. Instead, worker's compensation benefits were future income replacing wages an employee is unable to earn because of injury. *Id.* at 758–759. Thus, the court concluded that worker's compensation benefits were future income not property under IC 31–1–

11.5–2(d), and not subject to distribution. *Id.* at 759.

■ Here, the trial court found that James received his disability pension because of his disability only and that it was intended to compensate him for future income. The record does not indicate that James made any contributions to the pension while employed nor does it show that James took any action to deplete marital assets in order to accumulate this pension. James' disability pension is akin to the worker's compensation benefits described in *Leisure* rather than the disability insurance pension in *Gnerlich*. Thus, applying the rationale in *Leisure*, we determine that the nature of James' disability pension was to compensate him for lost earnings and that it represents future income which is separate property outside the scope of IC 31–1–11.5–2(d).[3] Therefore, we conclude that the trial court did not abuse its discretion by excluding James' disability pension from the property distribution.[4]

### III.

### *Property Distribution—Lump Sum Payment*

Next, Kathy contends that the trial court erred by including a lump sum social security payment to Jeff as marital property subject to distribution. As indicated *supra*, in reviewing a trial court's division of property, we consider only the evidence favorable to the judgment, and will reverse only upon a showing of an abuse of discretion. *Fields,*

2. The court explained that the disability pension at issue, like a retirement pension, was readily ascertainable and susceptible to division and that its nature was not more contingent or speculative that an ordinary retirement pension with the exception that it was contingent upon the claimant's continued disability. *Gnerlich, supra,* at 288.

3. Other jurisdictions have determined that disability pensions compensate for lost future earnings and are separate property not marital assets subject to distribution. *See e.g., In re Marriage of Peterson,* 870 P.2d 630 (Colo.Ct.App.1994); *Freeman v. Freeman,* 468 So.2d 326 (Fla.Dist.Ct.App. 1985); *In re Marriage of Miller,* 524 N.W.2d 442 (Iowa Ct.App.1994); and *Thompson v. Thompson,* 642 A.2d 1160 (R.I.1994). *See also Ciliberti v. Ciliberti,* 374 Pa.Super. 228, 542 A.2d 580, 582 (1988) (disability pensions comparable to work-

men's compensation disability payments because they replace future salary or wages which the employee, because of physical or mental disability, will not be able to earn).

4. Kathy further contends that even if James is entitled to his entire disability pension, the trial court still erred in calculating her child support obligation. Yet, Kathy's argument is based upon the faulty premise that James was awarded his entire disability pension because he was the custodial parent, and that her half of the pension was allocated to James as child support. As indicated *supra*, James' disability pension is a nonmarital asset not subject to distribution. Therefore, Kathy's contention that the trial court should have considered her half of James' disability pension in determining her child support obligation is without merit.

*supra.* The party challenging the trial court's division must overcome a strong presumption that the court complied with controlling statute. *Castaneda, supra.*

IND.CODE § 31–1–11.5–11(b) (1993) provides that the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts.

In its findings of fact, the trial court included a lump sum social security payment of $2,152.50 awarded to Jeff in its calculation of the parties marital assets subject to distribution. Kathy argues these funds were not marital property because they were issued to Jeff when he was an emancipated, adult child. We agree.

 Although for purposes of dissolution all assets of the parties are considered property to be divided, a party must have a present interest of possessory value for the property to be subject to distribution. *Hunt v. Hunt,* 645 N.E.2d 634, 637 (Ind.Ct.App. 1994). While the social security benefits were awarded to Jeff as a result of James' disability, they were issued in Jeff's name only after he became an emancipated adult. Neither Kathy nor James have an interest in monies which were awarded to Jeff alone. The trial court erred by including this amount in the parties' marital assets subject to distribution.

## IV.

*Child Support—Social Security Benefits*

 Finally, Kathy contends that the trial court erred by requiring her to pay $30.00 per week in child support. Trial court determinations of support obligations have traditionally been reviewed under an abuse of discretion standard. *Carr v. Carr,* 600 N.E.2d 943, 945 (Ind.1992). However, this standard was modified by the enactment of the Indiana Child Support Guidelines. Now, a trial court's support order will be disturbed only when it is clearly erroneous. *Id.*

The record indicates that J.J. receives monthly social security disability benefits of $608.55. Kathy does not dispute that as the disabled parent, James is entitled to a credit of this amount toward his support obligation. *See Young v. Young,* 654 N.E.2d 880, 884 (Ind.Ct.App.1995), *reh. denied, trans. pending,* and *Poynter v. Poynter,* 590 N.E.2d 150, 152 (Ind.Ct.App.1992), *trans. denied* (social security disability benefits paid on behalf of minor children should be credited toward the disabled parent's support obligation).

However, Kathy contends that because this monthly amount exceeds the total monthly support obligation of $127.00 computed pursuant to the Ind. Child Support Guidelines, she should not be required to pay $30.00 per week in child support, her portion of the monthly amount. We disagree.

 The child support guidelines presume a division of each parent's support obligation in proportion to each parent's weekly available income. *Gielsdorf–Aliah v. Aliah,* 560 N.E.2d 1275, 1276 (Ind.Ct.App.1990); *see also* Ind. Child Support Guideline 3(F), cmtry. 1. The income shares model set forth in the guidelines apportions the cost of children between the parents according to their means, and is based upon the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family remained intact. *See* Guideline 1, cmtry. Kathy cannot be relieved of her obligation to support her child based upon the disability benefits J.J. receives as a result of James' inability to work. Instead, she is required to pay according to her means. The trial court did not abuse its discretion by ordering Kathy to pay $30.00 for weekly child support.

Affirmed in part, reversed in part, and remanded.

GARRARD and KIRSCH, JJ., concur.