Linda (Hayden) LAWSON,
Appellant–Petitioner,

v.

Paul HAYDEN, Appellee–Respondent.

No. 50A03–0208–CV–256.

Court of Appeals of Indiana.

April 17, 2003.

Elizabeth C. Hurley, Hains Law Firm, LLP, South Bend, IN, Attorney for Appellant.

T. Edward Ummel, Easterday & Ummel, Plymouth, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Linda Lawson appeals the division of property in the decree of dissolution dissolving her marriage with Paul Hayden. Lawson presents the following restated issues for review:

1. Did the trial court abuse its discretion in awarding Hayden all of his Tier II Railroad disability benefits?

2. Did the trial court abuse its discretion in awarding Lawson only thirty-five percent of the Tier II Railroad retirement benefits Hayden will receive when he turns sixty-six years old?

We affirm in part, reverse in part, and remand.

The facts favorable to the judgment are that Hayden began working for the Norfolk and Southern Railroad (the Railroad) on November 11, 1968. On February 17, 1976, Lawson and Hayden were married. Hayden continued to work for the Railroad until he began to experience medical problems that eventually necessitated open-heart surgery on October 27, 1999. Hayden was unable to return to work following surgery. On April 10, 2000, Lawson filed a petition for dissolution. On May 30, 2002, following a hearing, the court entered a decree of dissolution dissolving the marriage. Lawson challenges only two aspects of that order, both related to the distribution of Hayden's Railroad retirement benefits. Because they are central to this appeal, we will set out in detail the facts relevant to those issues.

Effective August 1, 2000, Hayden began drawing benefits derived from his employment at the Railroad, called a Railroad Retirement Annuity (the Annuity). Beginning on that date and continuing thereafter, Hayden was entitled to a monthly Annuity payment of $2,319.50. That total included $1,493 in what was classified as Tier I benefits, and $826.50 in Tier II benefits. Those classifications were explained as follows in ATTORNEY'S GUIDE TO THE PARTITION OF RAILROAD RETIREMENT ANNUITIES (the Annuities Guide), an informational booklet sent to Hayden by general counsel for the Railroad Retirement Board (the Board).

An employee's railroad retirement annuity is a monthly benefit comprised of several components as described below.

¶ 104.01 *Non-divisible Tier I component.* The Tier I component of an employee's annuity is calculated by applying the benefit formula in section 215 of the Social Security Act to the employee's earnings record. For this purpose, an employee's earnings record includes both rail industry earnings and any earnings from employment covered by the Social Security Act. Tier I is the same benefit amount that the Social Security Act would provide if the employee's railroad employment had been covered by that Act. **Important: The Railroad Retirement Act prohibits partition of the Tier I component.**

¶ 104.02 *Divisible annuity components.* In addition to Tier I, an employee's annuity includes a Tier II component and may also include certain other components, as described below. The

RRA does not prohibit allocation as property of the following annuity components:

    (A) *Tier II component.* An employee's Tier II component is based solely upon rail industry service and earnings. It is calculated under section 3(b) of the Railroad Retirement Act.

    (B) *Supplemental annuity.* An employee who completes 25 years of railroad service and who had railroad service before 1981 may receive a supplemental annuity under section 2(b) of the Railroad Retirement Act. A supplemental annuity ranges in amount from $23 to $43 per month. ·

*Appellant's Appendix* at 43 (emphasis in original).

Lawson argued that she should receive fifty percent of all of Hayden's Tier II benefits. Hayden countered that Lawson should receive only one-fourth of the Tier II benefits that he will receive after he reaches the age of full retirement.[1] The trial court determined that Lawson should receive thirty-five percent of the Tier II benefits that Hayden will receive after he attains the age of sixty-six, which is the age at which he will become eligible to draw his full retirement pension. The trial court explained its decision as follows:

    The Husband is currently receiving benefits from a railroad retirement. Tier I benefits are simply the property of the Respondent with no claim by the Petitioner. The Wife is contending that Tier II payments are in essence early retirement payments, marital property, and subject to division. The Court determines that Tier II payments currently being made are occupational disability benefits. The wife is able to continue employment. The Husband is not. Accordingly, no distribution shall be made to the Wife of the occupational disability payments made under Tier II. The Wife is entitled to retirement benefits, which begin at the Respondent's attaining the age of sixty-six (66). Of the Tier II benefits payable upon the Respondent attaining age sixty-six (66), the Wife shall be entitled to receive in a Qualified Domestic Relations Order, thirty-five percent (35%) of the Tier II railroad retirement annuity payments.

*Appellant's Appendix* at 6. Lawson challenges two aspects of the court's order. First, she contends that the court erred in determining that she is not entitled to any portion of the Annuity payments Hayden receives before he reaches sixty-six years of age (i.e., the disability benefits). Second, she contends that the trial court erred in determining that, when she does begin to receive a portion of Hayden's Annuity benefits, she is entitled to only thirty-five percent, not fifty percent, of his Tier II retirement benefits. Further facts will be supplied where relevant.

■■■ The trial court entered findings and conclusions. When reviewing such an order, we apply the following standard:

    On appeal, we will not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. The judgment is clearly erroneous if the findings do not support the conclusions

---

**1.** There is no question that the Tier I portion of Hayden's monthly annuity payments was not divisible in the dissolution proceeding.

*See Appellant's Appendix,* Annuities Guide ¶ 104.01, and Lawson does not challenge that portion of the dissolution decree.

of law or the conclusions of law do not support the judgment.

The disposition of marital assets is within the sound discretion of the trial court. "When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *In re Marriage of Bartley,* 712 N.E.2d 537, 542 (Ind.Ct. App.1999). In reviewing a trial court's disposition of the marital assets, we focus on " 'what the court did, not what it could have done.' " [*Chase v. Chase,* 690 N.E.2d 753, 756 (Ind.Ct.App.1998) (quoting *Fiste v. Fiste,* 627 N.E.2d 1368, 1372 (Ind.Ct.App.1994), *disapproved of on other grounds by Moyars v. Moyars,* 717 N.E.2d 976 (Ind.Ct.App.1999), *trans. denied)* ].

Therefore, when we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute.

Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court.

*Elkins v. Elkins,* 763 N.E.2d 482, 484–85 (Ind.Ct.App.2002) (quoting *Bizik v. Bizik,* 753 N.E.2d 762, 766 (Ind.Ct.App.2001), *trans. denied* ).

The Board determined that Hayden is entitled to receive monthly Annuity payments in the amount of $2,319.50, and explained the nature of those benefits as follows:

You inquire as to the nature of the payments received by Mr. Hayden. Mr. Hayden is receiving an occupational disability annuity under the Railroad Retirement Act. His entitlement to this annuity is based upon his being unable to perform his past railroad employment. When he attains full retirement age, the amount of the annuity will not change (only the earnings limitations will be affected by his attaining retirement age).

All of the payments being made to Mr. Hayden by the Board are part of his occupational disability annuity. Mr. Hayden will be eligible to receive full retirement benefits at age 66. His entitlement to an occupational disability annuity will not affect his retirement age. There will not be any change in the amount of [T]ier II benefits attributable to his attaining retirement age.

If Mr. Hayden receives early retirement benefits there would be an age reduction in the annuity, but as long as he is eligible for an occupational disability annuity and does not wish to return to work, there would be no reason for him to obtain an early retirement annuity.

*Appellant's Appendix* at 37.

1.

■ We must first address the basis of the trial court's determination that Lawson should not receive any portion of Hayden's disability benefits. Lawson contends that the trial court determined that the disabili-

ty benefits should not be included in the marital pot, and thus was not subject to division. Hayden, on the other hand, contends that the trial court included the disability benefits in the marital pot, but determined that, on the facts of this case, they should be awarded entirely to Hayden.

Although the trial court did not explicitly state a conclusion that the disability benefits were marital property, the best interpretation of the language of the order indicates to us that such was its intention. We agree with Lawson that the disability benefits are indeed marital property subject to division. Three cases are instructive in reaching this conclusion. In *Gnerlich v. Gnerlich*, 538 N.E.2d 285 (Ind.Ct. App.1989), *trans. denied*, this court was asked to determine whether benefits from disability insurance were marital property subject to division. We concluded that they were because they were "so substantially similar in nature to an ordinary retirement pension". *Id.* at 288.

Then, in *Leisure v. Leisure*, 605 N.E.2d 755 (Ind.1993), our supreme court limited *Gnerlich* and held that worker's compensation benefits are not marital property subject to division. This holding rested upon two bases. First, the court noted that, in case of worker's compensation benefits, the recipient does not pay a monthly amount to provide for such insurance against lost earnings, nor does the recipient become eligible by taking any other action that would deplete marital assets. Second, the court noted that worker's compensation benefits are intended to replace the future wages that the employee would earn if he or she were able to continue to work. The court found it significant that a pension accrues while a person works and, therefore, can accrue at least to some extent during the marriage. In fact, the court characterized a pension as "a system

of deferred compensation, in that an employee accepts a lower present wage in order to receive a pension upon retirement." *Id.* at 759. The court concluded that worker's compensation benefits differ in that they are intended to replace wages an employee is unable to earn because of an injury. Accordingly, such benefits do not provide compensation for work actually performed, but rather compensate the employee for his or her decreased working capacity as a result of a work-related injury. The court also noted that after a pension becomes vested, it cannot be taken away from the employee, while worker's compensation benefits are contingent on the employee's continued disability. *Id.*

Against this historical backdrop, this court recently concluded that disability pension payments are similar to worker's compensation benefits and should be excluded from the marital assets in a dissolution action. *See Antonacopulos v. Antonacopulos*, 753 N.E.2d 759 (Ind.Ct.App.2001). In deciding *Antonacopulos*, we relied upon *Jendreas v. Jendreas*, 664 N.E.2d 367 (Ind. Ct.App.1996), *trans. denied*, where we determined that a disability pension was not marital property subject to division. That determination was based upon the following factors:

> [The employee/pensioner] received his disability pension because of his disability only and ... it was intended to compensate him for future income. The record does not indicate that [the employee/pensioner] made any contributions to the pension while employed nor does it show that [the employee/pensioner] took any action to deplete marital assets in order to accumulate this pension.

*Jendreas v. Jendreas*, 664 N.E.2d at 371.

It appears that the instant case presents a variation of the facts deemed to be determinative in *Antonacopulos*, *Jendreas*, and

*Gnerlich.* In those cases, the courts held that a disability pension was not marital property primarily for two reasons: (1) the pensioner did not pay for the disability benefit out of his salary or in any other way deplete marital assets to purchase or accumulate the benefit, and (2) the disability benefit represented payment for loss of future income. The latter is true in the instant case, but the former is not. "The Railroad Retirement Act (RRA) is a federal statutory scheme that replaces the Social Security Act for rail industry employees and employers." Annuities Guide ¶ 102, *Appellant's Appendix* at 41. Among other things, it provides monthly annuities based on disability. These annuities are funded in part by employment taxes paid by rail industry employees. The taxes paid are credited to trust funds from which the annuities are paid. Therefore, unlike *Antonacopulos, Jendreas,* and *Gnerlich,* in the instant case one of the factors (the "future earnings" nature of the benefits) favors *exclusion* as a marital asset, but the other (employee contribution) favors *inclusion* as a marital asset.

We discern nothing in the analyses in *Antonacopulos, Jendreas,* and *Gnerlich* conveying the idea that either factor is dispositive, or indeed even more important than the other. Instead, it seems to us that both are cited as being integral to the determination that disability benefits are not marital property. For this reason, we view the two elements in the conjunctive. That is, *both* must be present in order for the particular disability benefit in question to be excluded as marital property and thus not subject to division. *Cf. Baker v. Town of Middlebury,* 753 N.E.2d 67 (Ind. Ct.App.2001), *trans. denied* (discussing foundational requirements for admissibility of evidence).

■ As stated previously, we believe the best interpretation of the trial court's order is that it viewed the disability benefits as marital property subject to division. Thus, the trial court committed no error in classifying the payments Hayden will receive before he turns sixty-six as "disability" benefits that constitute marital property. We now proceed to an examination of the crux of the question concerning the first issue: whether the trial court abused its discretion in awarding to Hayden one hundred percent of the Tier II disability benefits.

■ We reiterate that the trial court is vested with broad discretion in dividing marital assets. *Elkins v. Elkins,* 763 N.E.2d 482. Although an equal division of the marital property is presumed, *see* Ind.Code Ann. § 31–15–7–5 (West 1998), a court may consider the respective earning abilities of the parties when distributing the marital estate. *See Roberts v. Roberts,* 670 N.E.2d 72 (Ind.Ct.App. 1996), *trans. denied.* More to the point, a dissolution court may consider any inequality in the parties' future economic prospects in fashioning an unequal award, so long as the result is just and reasonable. *See Baker v. Baker,* 488 N.E.2d 361 (Ind. Ct.App.1986).

Although still approximately thirteen years from reaching full retirement age, Hayden was disabled and it was determined that he would be unable to return to work. Lawson's future prospects were not so limited. She has an Associates Degree in computer networking and was employed by Lucent Technologies from 1999 to 2002. Through her employment at Lucent, Lawson accumulated several employment-related assets, including: (1) a Long Term Savings and Security Plan in the amount of $4,396.29, (2) Lucent Technology stock, valued at $1,343.40, and (3) joint PIMCO Funds (a jointly owned mutual fund) account containing $14,944.77. The funds in those three accounts were awarded entire-

ly to Lawson. Hayden was awarded the entire $12,358.10 that was in his VanGuard 401(k) account. Hayden's disability benefits total approximately $28,000 per year. After she had been at Lucent for three years, Lawson earned the equivalent of approximately $40,000.00 per year. It is true that she was laid off from her employment at Lucent prior to the filing of this appeal. There is nothing in the record, however, that indicates Hayden was or is incapable of securing another job. We note also that the parties agreed on a division of the proceeds from the sale of the marital residence, which called for Lawson to receive $28,357.44 and Hayden to receive $36,683.44. Also, apart from Hayden's disability benefits, the parties received equal shares of the marital assets. In short, neither party is destitute.

The parties' respective prospects for earning income between the time of dissolution and the time each would reach the age of retirement differed significantly. Although there is evidence that Hayden could earn a small amount through odd jobs,[2] to a large extent his future income will consist primarily of his disability and retirement benefits. Lawson's prospects are not limited by disability. Because Lawson is able to work, and her recent work history indicates that she is capable of earning more than Hayden will earn in disability benefits, the decision to award Hayden one hundred percent of his Tier II disability benefits was just and reasonable. The trial court did not abuse its discretion in this regard.

## II.

■■ Lawson contends that the trial court abused its discretion in awarding Lawson only thirty-five percent of the Tier II Railroad retirement benefits that Hayden would receive after he reaches full retirement age.

■ I.C. § 31–15–7–5(2)(A) provides that the presumption of equal distribution may be rebutted by evidence that, among other things, property was acquired by one spouse before the marriage. Under this provision, a trial court may achieve a just and reasonable result while ordering an unequal distribution of marital property. See, e.g., Doyle v. Doyle, 756 N.E.2d 576 (Ind.Ct.App.2001). In such cases, a court may set over to the appropriate spouse the pre-marriage value of the asset in question, and then divide equally between the parties the value of appreciation of the asset that is attributable to the marital period. See id.

Hayden's calculations indicate that he accumulated 24.4 percent of his pension before the marriage and the remaining 76.6 percent was accumulated during the marriage.[3] We assume that the court arrived at the amount of Tier II retirement benefits that would be awarded to Lawson by dividing that number (76.6 percent) roughly in half. Such would yield a figure of 38.3 percent. The trial court's decision to split between the parties only that portion of the Tier II benefits that was earned during the marriage finds support in I.C. § 31–15–7–5 and therefore was not an abuse of discretion.

We note, however, that there is nothing in the appellate materials that would explain why the court awarded 35 percent to Lawson, and not 38.3 percent. The difference in monetary terms is between $289.28 and $314.44. Because there is nothing in the appellate materials that explains this

---

**2.** Hayden testified that in 2001, he earned approximately $3,000.00 in "side income." *Transcript* at 77.

**3.** Lawson does not contest this calculation on appeal.

deviation, and because the difference, on facts of this case, is not *de minimis,* we conclude that the court abused its discretion in failing to award Lawson one-half of the Tier II retirement benefits that were earned during the marriage.

This cause is remanded with instructions to modify the dissolution order to reflect that Lawson will receive 38.3 percent of the Tier II retirement benefits for which Hayden will be eligible after he reaches full retirement age. The trial court is affirmed in all other respects.

Affirmed in part, reversed in part, and remanded.

BROOK, C.J., and MATTINGLY–MAY, J., concur.