Teresa THEOBALD, Appellant–Petitioner,

v.

Gregory THEOBALD, Appellee–Respondent.

No. 15A01–0305–CV–163.

Court of Appeals of Indiana.

March 9, 2004.

Deborah L. Farmer, Campbell Kyle Profitt LLP, Carmel, IN, Attorney for Appellant.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellee.

**OPINION**

BAKER, Judge.

Appellant-petitioner Teresa Theobald (Teresa) appeals the trial court's ruling in the dissolution of her marriage to appellee-respondent Gregory Theobald (Gregory).

Specifically, she argues that the trial court erred in admitting a home study report because she was not given the opportunity to cross-examine the person who prepared the report. Finding that Teresa waived her right to conduct such a cross-examination, we affirm the decision of the trial court.

## FACTS

Gregory and Teresa were married on December 26, 1991. Three children were born of the marriage—Nicklaus on June 20, 1991, Nathan on August 30, 1994, and Spencer on November 6, 2000. Teresa has experienced mental health problems during the marriage. She has been diagnosed with depression and paranoid delusions as well as other mental illnesses that include paranoia. In 2000, while pregnant with Spencer, she experienced a psychotic episode for which she was hospitalized for several days.

On April 3, 2001, Teresa filed for dissolution of marriage. By agreement of the parties, Dr. Gayla Kaibel conducted a custody evaluation. Dr. Kaibel testified before the court on July 31, 2002, that Teresa's paranoia was influencing the children in that they were much more afraid of the world than they need be. Dr. Kaibel noted two concerns about Teresa being the custodial parent: first that the children may become more distrustful and worried about other people and second that Teresa's anger and distrust of Gregory could turn the children against their father. Nevertheless, Dr. Kaibel recommended that Teresa have primary custody of the children, partly because Teresa had been the primary caregiver. Gene Colina, another expert witness, testified that Teresa's mental health was "fine," "strong," "involved," and "in good shape." Tr. p. 165.

Following the presentation of evidence at the December 2, 2002 hearing, the trial court sought an additional home study of both parent's homes to be conducted by White's Residential and Family Services (White's). The trial court then asked if either party's counsel expected there to be "any need to hear any further evidence after that report's received," and Teresa's trial counsel responded, "I don't." Tr. p. 519.

On February 3, 2003, Violet Robinson, on behalf of White's, reported to the court that the children would be best placed with the father. Robinson noted that in Teresa's home Nicklaus cares for Spencer and is unable to act like a child. She also reported that the children were not allowed outside often at Teresa's home because of Teresa's fears that they would get sick. Robinson further noted that at Gregory's home, Nicklaus acted like a child and had fun. Robinson expressed concern for the children's emotional health and stated, "these children will be more emotionally healthy if they live with their father." Appellant's App. p. 13.

On February 18, 2003, Teresa moved to quash Robinson's report. Gregory filed his objection thereto the next day, but no further hearings were held. On March 26, 2003, the trial court issued its Decree of Dissolution, which overruled Teresa's objection and motion to quash, stating that, "the report is entered as part of the record for consideration by the Court in these proceedings as agreed upon by the parties." Appellant's Br. p. 5. The trial court granted custody of the minor children to Gregory, and Teresa now appeals.

## DISCUSSION AND DECISION

This case involves statutory interpretation. Our standard of review for the interpretation of statutes is de novo. We review legal determinations to ascertain

whether the trial court erred in application of the law. *Clark v. Madden*, 725 N.E.2d 100, 104 (Ind.Ct.App.2000). Thus, we review the trial court's decision to deny Teresa's motion to quash without a hearing, which requires interpretation of an Indiana statute, de novo.

The trial court's order does not specify whether the home study was to be made pursuant to Indiana Code section 31–17–2–10 or to Indiana Code section 31–17–2–12. However, section 12 requires that a parent or the child's custodian request such a study. Because that did not occur in this case, we can only assume that the trial court entered its order pursuant to Indiana Code section 31–17–2–10, which states:

> (a) The Court may seek the advice of professional personnel even if the professional personnel are not employed on a regular basis by the court. The advice shall be given in writing and made available by the court to counsel upon request. (b) *Counsel may call for cross-examination of any professional personnel consulted by the court.*

(Emphasis added). The right to cross-examine witnesses under oath is a fundamental right which cannot be denied unless waived. *Courter v. Fugitt*, 714 N.E.2d 1129, 1132 (Ind.Ct.App.1999).

Here, at the conclusion of the final hearing, the trial court discussed the matter with both Teresa and Gregory's attorneys in chambers. On the record, the trial court stated its intention to seek input from White's. Tr. p. 518. After the trial court asked the parties if any additional evidence needed to be presented after the report was prepared, Teresa's counsel specifically acknowledged that no further evidence would be offered. Tr. p. 519. As a result, Teresa waived her right to cross-examine Robinson. *See Archem, Inc. v. Simo*, 549 N.E.2d 1054, 1060 (Ind.Ct.App.

1990) (finding right to cross-examination waived by mere failure to object when trial court did not provide opportunity to cross-examine the witness). Simply put, it would be inequitable to the opposing party and a waste of judicial resources to allow a litigant who has previously waived the right to cross-examination to rekindle this right through a motion to the trial court only after she discovers that the report is unfavorable to her position. In the context of Indiana Code section 31–17–2–10, once a party has waived the right to cross-examination, it remains waived.

The judgment of the trial court is affirmed.

BAILEY, J., concurs.

MAY, J., dissents with opinion.

MAY, Judge, dissenting.

As the majority notes, the trial court requested a home study pursuant to Indiana Code § 31–17–2–10, which also permits counsel to "call for cross-examination of any professional personnel consulted by the court." Ind.Code § 31–17–2–10(b). The majority holds Teresa waived her right to cross-examine the preparer of the report. Because I do not believe her statement at the hearing amounted to a waiver of that right, I respectfully dissent.

First, I disagree with the majority about the inference that should be drawn from the facts herein. After the trial court heard all evidence offered by the parties, it decided it wanted White's to conduct a home study. It asked the parties: "Do you think there's going to be any need to hear any further evidence after that report's received?" (Tr. at 519.) Teresa's counsel responded, "I don't." (*Id.*) The court indicated White's would "conduct an additional home study in both homes, report back to the Court, and we'll provide

copies to both of you Counsel, and this matter will be taken under advisement pending receipt of this additional report." (*Id.* at 519–20.)

Teresa's counsel agreed that she did not think there would be any need to hear "any further evidence after that report's received." (*Id.* at 519.) The majority interprets "any further evidence" to include cross-examination of the preparer of the report, but I would not interpret that phrase so broadly. While I believe counsel waived the right to present rebuttal evidence from additional witnesses,[1] I do not believe she waived the right to cross-examine[2] the preparer of the report from White's.

Moreover, I do not think a party can *implicitly* waive the right to cross-examine the preparer of a report under Ind.Code § 31–17–2–10 when the report has not yet been drafted and the parties thus cannot know its contents.[3] The statutory mechanism allowing parties to cross-examine preparers of court-ordered reports was provided by the legislature "[t]o obviate concerns over hearsay when a court utilizes" this procedure for obtaining evidence. *Owensby v. Lepper,* 666 N.E.2d 1251, 1255 (Ind.Ct.App.1996) (discussing Ind.Code § 31–1–11.5–21(e) (West Supp. 1995),[4] which contained language nearly identical to today's Ind.Code § 31–17–2–10), *reh'g denied.* Given that we cannot expect parties to know what evidence will appear in a report that has not be submitted, I do not believe Teresa was obliged to inform the court she thought she would need to cross-examine the preparer of the report. *See Jendreas v. Jendreas,* 664 N.E.2d 367 (Ind.Ct.App.1996), *trans. denied.*

In *Jendreas,* a divorcing couple was disputing who would have custody of their son. The parties agreed to be evaluated by Dr. Gary Durak. However, Durak ultimately was unavailable to testify at the hearing. At the end of the hearing, the trial court "indicated that it would rule on all pending issues except the custody matter, and ordered Durak to submit a report." *Id.* After Durak filed his report, the mother filed a motion "to conduct a hearing for the purpose of cross-examining Durak."[5] *Id.* The trial court denied that motion in an order that provided:

1. Rebuttal evidence is evidence "offered to disprove or contradict the evidence presented by an opposing party." Black's Law Dictionary 579 (7th ed. 1999).

2. Cross-examination is "[t]he questioning of a witness at a trial or hearing by the party opposed to the party who called the witness to testify." Black's Law Dictionary 383 (7th ed. 1999). "The purpose of cross-examination is to discredit a witness before the fact-finder in any of several ways, as by bringing out contradictions and improbabilities in earlier testimony, by suggesting doubts to the witness, and by trapping the witness into admissions that weaken the testimony." *Id.*

3. My position might not be the same if the trial court had *explicitly* asked the parties if they wanted to schedule an additional hearing to cross-examine the preparer of the report. However, as that scenario is not before me

today, I need not decide that more difficult question.

4. Ind.Code § 31–1–11.5–21(e) (West Supp. 1995) provided:

The court may seek the advice of professional personnel whether or not they are employed on a regular basis by the court. The advice given shall be in writing and shall be made available by the court to counsel upon request. Counsel may call for cross-examination of any professional personnel consulted by the court.

5. Mother claimed she had a right to cross-examine pursuant to Ind.Code § 31–1–11.5–22 (West Supp.1995), which provided in pertinent part:

(a) In custody proceedings after evidence is submitted upon the petition, if a parent, or the child's custodian so requests, the court

The Court has reviewed the file and the pleadings, and finds that on August 9, 1994, evidence was concluded and both parties rested. The Court then asked Dr. Durak to issue a report.... Said report was requested by the Court to better evaluate the testimony of the parties at the August 9 hearing. This was the sole reason for requesting Dr. Durak to prepare a supplemental report. Accordingly, the Court finds that this case is concluded, and should not be re-opened.

*Id.* at 369 n. 1.

Mother appealed claiming the trial court violated her right to due process when it refused to allow her to cross-examine Durak. We explained:

Procedural due process must be provided to protect the substantive rights of the parties in child custody proceedings, and an opportunity to be heard is essential before a parent can be deprived of custody. Even where the technical requirements of the [statute] are not met, when reports are considered by the trial court in making its determination, the parties should have the opportunity to examine their veracity and the probity of their conclusions. Once the court decides to order a study to aid in the custody determination, the court is obligated by due process to hold a further hearing.

In *Van Etta* [*v. Van Etta*, 583 N.E.2d 767, 768 (Ind.Ct.App.1991) ], the father filed a petition to modify custody and after a hearing, the court *sua sponte* ordered a home study by the county welfare department. The report was filed with the court and without another hearing, the court granted custody to the father. Mother appealed, arguing that the trial court erred in considering the home study report without a hearing. This court reversed, noting that even though the court ordered the report *sua sponte* and the technical requirements of IC 31–1–11.5–22 were not met, it could not tell to what extent the court based its judgment on the unchallenged report, making a hearing essential in order to protect the mother's due process rights.

Similarly, although the technical requirements of IC 31–1–11.5–22 are not met here, its legislative intent remains clear; parties should have the opportunity to examine into the veracity and the support for any conclusions reached in investigative reports. Here, Durak submitted two reports subsequent to the hearing which made different recommendations regarding the custody of [son]. The court then awarded [father] custody. In its findings, the trial court relied upon the September 14, 1994 letter, noting that Durak recommended [son] live with his father on a full-time basis and that Durak "has established a pattern of consistently moving closer to the position of Mr. Jendreas on the custody issue." Yet, by denying [mother]'s request for a hearing, the trial court precluded her from examining the veracity and probity of Durak's recommendations which the trial court expressly relied upon in reaching its conclusion.

may order an investigation and report concerning custodial arrangements for the child....

(b) ... If the requirements of subsection (c) are fulfilled, the investigator's report may be received in evidence at the hearing, ...

(c) The court shall mail the investigator's report to counsel and to any party not represented by counsel at least ten (10) days prior to the hearing.... Any party to the proceeding may call the investigator and any person whom he has consulted for cross-examination. No party may waive his right of cross-examination prior to the hearing.

Due process requires otherwise. Accordingly, we determine that a hearing subsequent to the submission of Durak's reports was essential to protect [mother]'s due process rights and remand for further proceedings.

*Id.* at 370 (internal citations omitted).

I acknowledge the language of the controlling statute has changed since this court decided *Jendreas* and *Van Etta.* Nevertheless, the current statute still evidences the legislature's intent that "parties should have the opportunity to examine into the veracity and the support for any conclusions reached in investigative reports," *id., see also* Ind.Code § 31–17–2–10(b), and due process still requires us to provide parents an opportunity to be heard before we remove their children from their custody. Therefore, I believe we should follow the reasoning of *Jendreas* and *Van Etta* and require the trial court to hold another hearing when requested by a party after the trial court *sua sponte* ordered a study at the end of the custody hearing.

Teresa's agreement that she did not "think there's going to be any need to hear any further evidence after that report's received" (Appellant's App. at 19) did not constitute waiver of her right to cross-examine under Ind.Code § 31–17–2–10. In her motion to quash the report, Teresa requested a hearing and noted she "did not have the opportunity to impeach this witness." (*Id.* at 16.) That language was a sufficient request for the hearing permitted by Ind.Code § 31–17–2–10, and upon Teresa's request, due process required the trial court to conduct a hearing. Any difference between the terms "cross-examine" and "opportunity to impeach" is wholly trivial given the statutory language.

Because the trial court specifically indicated it needed an additional home study to help it determine who should have custody and because the trial court followed the recommendation of White's home study when placing the children with Gregory, I am unable to hold that the denial of Teresa's right to cross-examine the reporter was harmless error. Accordingly, I would reverse the trial court's judgment and remand for a hearing at which Teresa is provided an opportunity to cross-examine Violet Robinson, preparer of the court-ordered home study report.