Edward WILSON and Deborah Wilson,
Appellants–Respondents,

v.

Sharon CLOUM, Appellee–Petitioner.

No. 80A05–0302–CV–57.

Court of Appeals of Indiana.

Oct. 14, 2003.

Rehearing Denied Dec. 2, 2003.

Karen A. Wyle, Bloomington, IN, Attorney for Appellants.

Mark. A. Ryan, Kokomo, IN, Attorney for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellants-respondents Edward and Deborah Wilson (respectively, "Father" and "Mother"; collectively, "Parents") appeal the trial court's grant of the petition for visitation of appellee-petitioner Sharon Cloum ("Grandmother"). We affirm in part and vacate in part.

### Issues

Parents raise three issues for review, which we consolidate and restate as the following two:

I. whether the trial court abused its discretion in granting Grandmother's petition; and

II. whether the trial court abused its discretion in crafting its visitation order.

### Facts and Procedural History

On April 21, 2000, M.C. was born to Jeffrey and Michelle Cloum. Jeffrey is Grandmother's son, and Michelle was Parents' daughter. From April to July 2000, Grandmother saw M.C. approximately twenty to thirty times. In July 2000, following a dispute regarding discipline, Jeffrey's daughter (and M.C.'s half-sister) K.C. went to live with Grandmother. Thereafter, Jeffrey and Michelle denied Grandmother access to M.C.

On January 11, 2001, Jeffrey killed Michelle. On January 18, 2001, the Tipton Circuit Court appointed Parents as M.C.'s temporary guardians. Around the time of Michelle's funeral, Grandmother telephoned Father and asked if she could look after M.C. while Parents cleaned out Jeffrey and Michelle's house. Father replied, "no, not with this thing with Jeff that's going on." Tr. at 17. Jeffrey subsequently pled guilty to voluntary manslaughter.

On February 1, 2002, Grandmother petitioned for visitation with M.C. On August 30, 2002, the Tipton Circuit Court terminated Jeffrey's parental rights to M.C. and granted Parents' petition to adopt M.C. On January 23, 2003, the Circuit Court granted Grandmother's petition in an order reading in relevant part as follows:

> The Court, after hearing evidence, now finds:
>
> . . . .
>
> 5. That [Father] prevented [Grandmother] from seeing [M.C.]
>
> 6. That [Grandmother] was advised by [Father] not to contact [Parents].
>
> 7. That [Grandmother's] lack of visitation during the first three (3) years of [M.C.'s] life has not been material to the issues for consideration.
>
> 8. That it would be in the best interest of [M.C.] to have regular contact and visitation with [Grandmother].

9. That visitation should take place on a graduated schedule eventually involving regular visitations including holidays and summer visitation.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. That the Petition for Grandparent Visitation is hereby granted.

2. That [Grandmother] shall have visitation with [M.C.] under the following schedule:

(a) For a period of three (3) consecutive weeks, [Grandmother] shall visit with [M.C.] in the home of [Parents] for a period of two (2) hours two (2) times a week. The six (6) visitations over the three (3) week period will be scheduled between the parties.

(b) For a period of eight (8) weeks, [Grandmother] shall visit with [M.C.] for two (2) hours per week outside of the home of [Parents].

(c) Thereafter, and until further order of the Court, [Grandmother] shall have visitation from 5:00 P.M. on Friday until 5:00 P.M. on Sunday on the third weekend of each month. Said visitation shall begin on March 29, 2003 and each third weekend thereafter.

(d) The Court further awards [Grandmother] visitations for the holidays and summer visitation and request that the parties endeavor to schedule the aforesaid times for holiday and summer visitation between themselves. If the parties are unable to agree, the Court will order visitation.

3. That [Grandmother's] visitation is conditioned upon the following requirements:

(a) [Grandmother] shall take part in any counseling for [M.C.] requested by the counselor for [M.C.] [Parents] shall keep the counselor aware of the status of [Grandmother] in regards to counseling.

(b) Each party is ordered not to make any derogatory comments regarding the other party in the presence of [M.C.]

(c) [Grandmother] shall not discuss the events of the death of Michelle Cloum unless at the request of or questioning by [M.C.]

4. The Court further orders that [Grandmother] shall be the primary caregiver or babysitter for [M.C.] after expiration of eight (8) weeks.

Appellant's Br. at 27–30. Parents now appeal.

## Discussion and Decision

### I. *Award of Grandparent Visitation*

 Parents contend that the trial court abused its discretion in granting Grandmother's petition for visitation with M.C.

The Indiana Grandparent's Visitation Act [ ("the Act") ] provides that under certain circumstances, a court may award visitation rights to a grandparent where doing so is in the best interests of the child. IC 31–17–5–1; 31–17–5–2.[1]

1. *See* Ind.Code § 31–17–5–1("(a) A child's grandparent may seek visitation rights if: (1) the child's parent is deceased; (2) the marriage of the child's parents has been dissolved in Indiana; or (3) subject to subsection (b), the child was born out of wedlock. (b) A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3) if the child's father has not established paternity in relation to the child.") (format altered); Ind.Code § 31–17–5–2("(a) The court may grant visitation rights if the court determines that visitation rights are in the best interests of the child. (b) In determining the best interests of the child under this section, the court may

The determination of the best interests of the child is committed to the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of that discretion. An abuse of discretion exists where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. We will not reweigh the evidence or judge the credibility of the witnesses.

Grandparent visitation statutes are a legislative recognition that a child's best interest is often served by developing and maintaining contact with his or her grandparents. Grandparents are members of the extended family whom society recognizes as playing an important role in the lives of their grandchildren, the importance of which has been given added meaning by the legislature's policy judgment underlying the Act. The legislature designed the Act to promote intergenerational contact and strengthen the bonds of the extended family in an era that has witnessed the disintegration of the nuclear family in an effort to provide an alternative or supplementary source of family support for children. .... When drafting [the Act], the legislature had to balance two competing interests: the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren. It has long been recognized in our traditions and collective conscience that parents have the right to raise their children as they see fit. Visitation rights conferred by the Act are not a substantial infringement on the parent's fundamental rights because the Act only contemplates occasional, temporary visitation as found to be in the best interest of the child.

*Swartz v. Swartz*, 720 N.E.2d 1219, 1221–22 (Ind.Ct.App.1999) (quotation marks and some citations omitted).

■ Parents contend that the trial court failed to adhere to constitutionally required standards in evaluating Grandmother's petition. Specifically, they contend that the trial court failed to presume that their decision regarding visitation was in M.C.'s best interests and that it failed to give their decision special weight. To support this contention, Parents rely on *Crafton v. Gibson*, 752 N.E.2d 78 (Ind.Ct.App. 2001). In *Crafton*, a panel of this court concluded that a trial court must "presume[ ] that a [parent's] decision was in her children's best interest" and that a trial court must give "special weight" to a parent's decision regarding visitation. *Id.* at 98, 99. In so concluding, the *Crafton* court relied on the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

■ Parents' contention on this point is simply an invitation to reweigh the evidence, which we will not do. "We presume the trial court followed the law and made all proper considerations in the exercise of its discretion. We also exercise 'preference for granting latitude and deference to our trial judges in family law matters.'" *Huffman v. Huffman*, 623 N.E.2d 445, 449–50 (Ind.Ct.App.1993) (citations omitted), *trans. denied* (1994).[2]

consider whether a grandparent has had or has attempted to have meaningful contact with the child.") (format altered).

2. In *McCune v. Frey*, 783 N.E.2d 752 (Ind.Ct. App.2003), a panel of this court concluded that

when a trial court enters a decree granting or denying grandparent visitation, it must

Parents also challenge several of the trial court's findings but do not challenge its ultimate finding that it would be in M.C.'s best interests to have visitation with Grandmother. *See* Ind.Code § 31–17–5–2(a) ("The court may grant visitation rights if the court determines that visitation rights are in the best interests of the child."). In sum, Parents have not established that the trial court abused its discretion in granting Grandmother's petition for visitation with M.C.

## II. Visitation Order

 Parents contend that the trial court abused its discretion in allowing Grandmother to discuss the circumstances of Michelle's death with M.C. and in ordering them to use Grandmother as M.C.'s primary babysitter. As for the first contention, we note that the trial court's order does not allow Grandmother to broach the subject of Michelle's death with M.C., but only to respond if asked. Furthermore, Parents do not explain how their own ability to assist M.C. in coming to terms with Michelle's death would be adversely affected if M.C. were to ask Grandmother about it. Parents have failed to establish an abuse of discretion in this regard.

As for Parents' second contention, we observe that

in determining what is in the best interests of a child, the trial court must keep in mind that the right of parents to establish a home and raise their children

is time-honored and protected by the Fourteenth Amendment. *Pierce v. Society of Sisters* (1925), 268 U.S. 510, 534–535, 45 S.Ct. 571, 573, 69 L.Ed. 1070; *Parent–Child Relationship of L.B. & S.C.* (1993), Ind.App., 616 N.E.2d 406, 407; *Shaw v. Shelby Cty. D. of Public Welfare* (1992), Ind.App., 584 N.E.2d 595, 601. Indeed, the state has no official guidelines for the every-day responsibilities of child-rearing, nor does the state have a special interest in substituting its judgment, through the authority of a judge, for that of a child's parents in carrying out those responsibilities.

*Keen v. Keen,* 629 N.E.2d 938, 941 (Ind.Ct. App.1994).

Clearly, choosing a babysitter is an everyday responsibility of child rearing in which the State has no special interest in substituting its judgment. It is one thing for the trial court to grant Grandmother visitation with M.C. under Indiana Code Section 31–17–5–2; it is quite another for the trial court to dictate Parents' choice of a babysitter. We therefore vacate that portion of the trial court's order.

Affirmed in part and vacated in part.

BAKER and SHARPNACK, JJ., concur.

---

set forth findings of fact and conclusions of law in said decree. In those findings and conclusions, the trial court should address: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.

*Id.* at 757 (footnote omitted). We note, however, that the trial court in the instant case entered its order approximately one month before *McCune* was decided. Moreover, unlike the trial court in *McCune,* the trial court here specifically found that visitation would be in the child's best interests. For these reasons, we decline Parents' invitation to remand "with directions that the trial court give the necessary special weight to Parents' decisions and the concerns they have expressed in connection therewith." Appellants' Br. at 26.