Timothy RAMSEY, Appellant–
Defendant,

v.

Brenda RAMSEY, Appellee–Plaintiff,

and

Karl and Cheryl Sodders, Appellees–
Intervenors.

No. 68A05–0608–CV–461.

Court of Appeals of Indiana.

April 11, 2007.

Linda Stemmer, Husmann & Stemmer, Union City, IN, Attorney for Appellant.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Timothy Ramsey appeals the trial court's grant of Cheryl and Karl Sodders's petition for grandparent visitation. On appeal, Ramsey raises several issues, but we find one dispositive: whether the trial court issued sufficient findings and conclusions along with its Order. Concluding that the trial court did not issue sufficient findings and conclusions to support an award of grandparent visitation, we reverse and remand. Because the remaining issues are likely to recur on remand, we also address Timothy's arguments of whether the trial court abused its discre-

tion in awarding unsupervised visitation, and whether the trial court improperly failed to specify who would bear the cost of court-ordered counseling. We conclude that insufficient evidence exists to support an award of unsupervised visitation, and that the trial court's order indicates that the Sodderses are required to pay for the counseling and therapeutic visitation.

### Facts and Procedural History

Timothy and Brenda Ramsey[1] were married in 1996. During their marriage, they had one child, L.R. Brenda has three children from a previous marriage, Caleb Lightner, Et.L., and Ev.L. Brenda filed a petition for dissolution of marriage in 2002, and shortly thereafter, Timothy filed a cross-petition for dissolution.

In early July 2003, Brenda removed L.R. from Indiana, without informing Timothy or the trial court. The Sodderses knew that Brenda was planning on leaving the state with L.R., and not only told no one, but also gave Brenda money to assist her departure. One Johonnas Aikie, also referred to as "the gatekeeper," was a central figure in the disappearance and relocation.[2] At some point, Caleb, Et.L., and Ev.L. joined Brenda, L.R., and Aikie. Et.L. and Ev.L. ran away from their father, Bill Lightner, roughly around the time that Lightner agreed to allow the Sodderses see his children. However, there is no evidence that the Sodderses played any role in the Lightner children's departure.

In October 2003, the Sodderses were joined as third-party defendants in the dissolution action, and on the same day filed a "Special Judicial Notice," in which they alleged, among other things: (1) Timothy and Lightner were operating a RICO enterprise; (2) Timothy and Lightner stole a four-wheeler from the Sodderses; (3) Timothy auctioned off equipment not belonging to him; (4) Timothy "stalked and harassed" the Sodderses' neighbor; (5) Timothy is "a known child molester," who was "trying to use public media to continue sexually molesting [L.R.]"; (6) Timothy cut a phone wire running to Brenda's "trust house"; (7) Timothy stole woodworking equipment from Brenda's "trust"; and (8) the case had been removed to federal court, and that therefore the state court had no jurisdiction to issue further orders. Appellant's Appendix at 48–49. Cheryl testified that Aikie had drafted this document, but that she and her husband had signed and filed it. Timothy subsequently filed a complaint against the Sodderses alleging libel. In response to this complaint, a threatening letter, apparently drafted by Aikie, but signed by Karl, was sent to Timothy's attorney. Among other things, the letter referred to the suit as "bogus," and told Timothy's attorney, "You have ten days to back out. Otherwise, Timmy will lose big time.... So if you want to push this phony libel suit, GET AFTER IT! Then watch what happens next.... And the whole community is watching you to see if you will turn and do what is right, or if you are going to go down the tubes with him." Appellant's Exhibit 3.

In November 2003, the trial court issued a Writ of Assistance instructing the Sheriff to assist a Receiver and Timothy enter the Sodderses' property to retrieve Timothy's belongings. The Sodderses either removed, or arranged for the removal of, these belongings before Timothy could retrieve them. In February 2004, the trial

---

**1.** Brenda now uses the name Dr. Brenda Sodders.

**2.** It also appears that Brenda had become involved with the "Little Shell Pembina Band of North Dakota," and claimed that this organization had adopted L.R.

court found the Sodderses in contempt for violating the trial court's orders. As a result of these findings of contempt, Karl spent fifty-seven days in jail and twenty-one days on house arrest, and Cheryl spent seventy-one days incarcerated or hospitalized. At the immediate hearing, Cheryl repeatedly denied having lied to the court, but admitted that she had withheld information from the court regarding the removal of Timothy's property.[3]

For roughly two years, Timothy was unable to speak to or see L.R., and was unaware of her whereabouts. During this time, Timothy put up signs asking for assistance in locating his daughter. Cheryl testified that she and others physically removed these signs because they felt the signs were a form of harassment. Within the first year of L.R.'s absence, the Sodderses spoke to L.R. roughly five times, and spoke with Aikie weekly. It does not appear that the Sodderses ever told Timothy that they were in contact with his daughter, or that they knew she was alive.

In 2004, while Brenda and L.R.'s whereabouts were unknown, the trial court granted Timothy and Brenda a dissolution and awarded custody of L.R. to Timothy. Timothy finally located L.R. in Colorado in June 2005, at which point L.R. returned to Timothy's home. Since this return, Timothy still fears that L.R. will once again be taken from him, and has restricted L.R.'s contact with those he feels were involved in her disappearance. Relevant to this appeal, he has not allowed the Sodderses visitation with L.R.

Timothy expressed two principle concerns with visitation: that L.R. will be abducted again, and that the Sodderses will say things to L.R. about Timothy condemning him as a person and father. To support these fears, he noted the Sodderses' role in L.R.'s disappearance, and testified that Brenda would often say bad things about Lightner in front of Et.L. and Ev.L. while Cheryl was present, and that Cheryl was supportive of Brenda. He also noted the document that the Sodderses

---

3. The following exchange took place between the trial court and Cheryl:

Court: Did you give any incorrect or any misleading information to the Court regarding your knowledge of that property of where it was going and who took it, anything relating to that property?
Cheryl: You know I may have, I don't remember because it was such an emotional time. We didn't have any knowledge of where it was or where it went.
Court: But are you indicating that you may have intentionally misled the Court at that time about your knowledge, your overall knowledge, of this property and where it was going and how it was getting there?
Cheryl: We told the Court completely what we knew.
Court: You didn't tell the Court that this property was put in a semi-trailer and you didn't know how it was taken and where it went?
Cheryl: At first we did. At first we did because we didn't know. Somebody else did it, but we were . . .

Court: But did you have knowledge at that point . . .
Cheryl: We had knowledge . . .
Court: As far as who that individual was and yet you didn't divulge that to the Court did you?
Cheryl: Not at that time.
Court: So you gave the Court misleading or incorrect information initially?
Cheryl: The Court probably perceived it as that, yes.
Court: No, I am not asking what the Court perceived. Were you asked questions about this property and who was taking it and you had knowledge that you did not give the Court when you knew that was being asked of you, that is my question?
Cheryl: I don't know how to answer that except that I did not lie about it.
Court: Did you withhold information from the Court that you knew the Court wanted with regard to that property?
Cheryl: Yes.
Tr. at 105–06.

filed with the court accusing him of operating a RICO enterprise and molesting L.R. As Timothy's counsel pointed out, Cheryl testified that she still believes that Timothy molested and abused L.R. in the past, and that she does not fear for L.R.'s safety now because she believes Timothy's new wife is protecting L.R. *See* Tr. at 119, 230. Cheryl also indicated that she feels Timothy should not have attempted to obtain custody of L.R. after Brenda removed L.R. from Indiana. *See* Tr. at 121 (responding to the question "Tim should not [have tried] to get custody of [L.R.], why?" Cheryl answered, "Why should he have, we don't have any reason for him to have tried that. It happened while she was gone that is the only reason it happened.").

Timothy has indicated that he would like L.R. to see the Sodderses at some point. He testified that "I will never keep [L.R.] from her brothers or [her] mother or [her] grandparents, but not right now.... I have to have trust." *Id.* at 164. Timothy testified that in order to have trust, the Sodderses would need to apologize to him for helping Brenda abscond with L.R. and for making accusations of molestation against him.

Dr. Susan Spencer, a psychologist who had been working with L.R. and Timothy, also agreed that it would be beneficial for L.R. to eventually be reunited with her grandparents. However, she testified that "I am not so sure [visitation with the grandparents] is important at this point. I think grandparents have a very definite role in the child's life and at some time there should be a reunification. But only after it has been determined that [it] can be in the child's best interest and not do any further harm to her." *Id.* at 47. She

also testified that if visitation were to occur, "it would need to be done in a controlled environment where a therapist could hear what is being said and [the Sodderses] have to understand clearly that they would not be allowed to say anything negative or derogatory about [Timothy]." *Id.* at 76. She also gave her opinion that it would be in L.R.'s best interests to wait until she had finished her current school year, at the time a period of roughly seven months, to begin any sort of reunification process with any family members. Finally, she gave her opinion that at that time, grandparent visitation was not in L.R.'s best interests.

Cheryl testified that she was no longer in contact with Aikie or Brenda, that she and her husband would not make any attempt to assist a removal of L.R. from Indiana, and that she would do everything she could to protect L.R. She testified that she believes visitation would be best for L.R., and that she and her husband would not do anything to undermine Timothy's relationship with L.R.

On June 28, 2006,[4] the trial court issued an Order on Verified Petition for Visitation, along with findings and conclusions.[5] The trial court made the following conclusions:

1. That since the return of [L.R.] to [Timothy], [Timothy] has acted in the best interest of [L.R.] by not permitting [the Sodderses] to visit with [L.R.] through this difficult period in [L.R.'s] life.

2. That by restricting [L.R.'s] contact with some family members, [Timothy] has helped [L.R.] begin to achieve a sense of stability.

---

4. We note that by this date, L.R. would likely have finished the first grade, her "current school year" at the time of the hearing.

5. Under Indiana Code section 31–17–5–6, the trial court is required to issue findings and conclusions along with its order regarding grandparent visitation.

3. That [Timothy's] decisions as to [L.R.'s] contact with other family members must be given special weight by the Court.

4. That despite the special weight that must be accorded [Timothy's] decisions, it would now be in the best interest of [L.R.] to have contact with [the Sodderses].

5. That the initial contact between [the Sodderses] and [L.R.] should take place in a therapeutic setting.

6. That [the Sodderses] should have an initial visit with the therapist prior to the visit with [L.R.], in order to discuss [L.R.'s] needs, as well as to discuss the dynamics of the reunification.

7. That following the therapeutic visits, [the Sodderses] should have several short visits prior to an expanded visit.

8. Following this period of re-introduction of [the Sodderses] into [L.R.'s] life, [the Sodderses] should have a monthly, unsupervised, six hour visit with [L.R.].

Appellant's App. at 31.

Timothy now appeals the trial court's order.

### Discussion and Decision

### I. General Principles of Grandparent Visitation

■ Grandparents "do not have the legal rights or obligations of parents," and "do not possess a constitutional liberty interest in visitation with their grandchildren." *Swartz v. Swartz*, 720 N.E.2d 1219, 1221–22 (Ind.Ct.App.1999). On the other hand, parents do have a "constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children." *Id.; see also Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). However, our legislature has enacted the Grandparent Visitation Act, Ind. Code § 31–17–5–1 *et seq.* (the "Act"),

recognizing that "a child's best interest is often served by developing and maintaining contact with his or her grandparents." *Swartz*, 720 N.E.2d at 1221; *see Troxel*, 530 U.S. at 63–64, 120 S.Ct. 2054 (discussing rationale for protecting relationship between grandparent and child). This Act constitutes a balance between "the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." *Id.*

■ Under the Act, a trial court may grant visitation rights if it determines that "visitation rights are in the best interest of the child." Ind.Code § 31–17–5–2. This determination is a matter for the trial court's discretion, and we will reverse only upon a showing of an abuse of that discretion. *Swartz*, 720 N.E.2d at 1221. An abuse of discretion exists where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. *Id.* We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

■■ We also note that in this case, the Sodderses did not file an appellate brief. When an appellee fails to submit a brief, we will not "undertake the burden of developing arguments for the appellee." *In re Paternity of B.D.D.*, 779 N.E.2d 9, 13 (Ind.Ct.App.2002). In these situations, "[w]e apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the trial court's decision if the appellant can establish prima facie error." *Id.* In this context, prima facie error is defined as "at first sight, on first appearance, or on the face of it." *Id.* (citations omitted). We will affirm unless an appellant can show such error. *Id.*

## II. The Trial Court's Findings and Conclusions

Timothy argues that the trial court issued insufficient findings and conclusions because the trial court did not indicate that it afforded Timothy the presumption that he was acting in L.R.'s best interests when denying visitation. We agree.

When a trial court issues an order on a petition for grandparent visitation, it must issue findings and conclusions. Ind.Code § 31–17–5–6. In *McCune v. Frey*, 783 N.E.2d 752 (Ind.Ct.App.2003), we indicated that these findings and conclusions should specifically address four factors: "(1) the presumption that a fit parent acts in his or her child's best interests; (2) the special weight that must be given to a fit parent's decision to deny or limit visitation; (3) whether the grandparent has established that visitation is in the child's best interests; and (4) whether the parent has denied visitation or has simply limited visitation." *Spaulding v. Williams*, 793 N.E.2d 252, 257 (Ind.Ct.App.2003) (citing *McCune*, 783 N.E.2d at 755). The trial court may also consider whether grandparents have had or have attempted to have meaningful contact with the child. Ind. Code § 31–17–5–2.

Although *McCune* indicated that the trial court merely "should" address these four factors, 783 N.E.2d at 755, subsequent cases have interpreted *McCune* as establishing substantive requirements with which a trial court must comply when issuing an order on grandparent visitation. *See In re Paternity of P.E.M.*, 818 N.E.2d 32, 37 (Ind.Ct.App.2004) (stating that in *McCune* "we held that when entering a decree granting or denying grandparent visitation, the trial court *must* set forth findings of fact and conclusions of law addressing [the four factors]" (emphasis added)); *Megyese v. Woods*, 808 N.E.2d 1208, 1216 (Ind.Ct.App.2004) ("The trial court expressly entered findings of fact and conclusions thereon, therefore satisfying the requirements of T.R. 52 and I.C. § 31–17–5–6, so we must determine whether the trial court complied with the more specific *requirements* of *McCune*." (emphasis added)); *cf. Wilson v. Cloum*, 797 N.E.2d 288, 291 n. 2 (Ind.Ct.App.2003), *trans. denied* (declining to reverse even though trial court did not specifically address the four *McCune* factors partly because the trial court issued its order before *McCune* was decided); *Spaulding*, 793 N.E.2d at 257 n. 1 (noting that trial court was not required to comply with *McCune* requirements because trial court issued its order before *McCune* was decided). Based on this case law, we agree with Timothy that the trial court was required to comply not only with the statutory requirement that it issue findings and conclusions, but also with the requirement established by *McCune* that it specifically address the four factors.

■■■ The trial court in this case issued a finding indicating that it gave Timothy's decision to restrict visitation special weight. However, nowhere in its findings does the trial court indicate that it afforded Timothy the benefit of the presumption that his decision was in L.R.'s best interest. The requirement that a trial court give special weight to a parent's decision is distinct from the requirement that a trial court presume that a fit parent's decision is in the child's best interest.[6] *See Me-*

---

**6.** We recognize that language in *Crafton v. Gibson*, 752 N.E.2d 78 (Ind.Ct.App.2001), may seem to intertwine the concepts of the presumption that a fit parent acts in the child's best interest and the special weight given to a parent's decision. *See id.* at 96 ("As such, the trial court was required ... to give special weight to her decision not to allow Gibson visitation with her minor children. That said, it is important to note that

*gyese,* 808 N.E.2d at 1216 (analyzing separately whether the trial court applied the presumption and whether the trial court gave parent's decision special weight); *McCune,* 783 N.E.2d at 759 ("[I]t is not clear from the record before us whether the trial court applied the presumption that a fit parent acts in his or her child's best interests, *and* whether the court gave special weight to that decision." (emphasis added)). Although the concepts are related in that they both establish hurdles for grandparents attempting to secure visitation, they differ in important aspects. The weight of certain evidence refers to "[t]he persuasiveness of some evidence in comparison with other evidence." Black's Law Dictionary 1588 (7th ed.1999). A presumption, on the other hand, is "[a] legal inference or assumption that a fact exists." *Id.* at 1203. "A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption." *Id.* Thus, the requirement that the trial court recognize the presumption ensures that the trial court properly allocates the burden of proof, while the requirement that the trial court afford the parent's decision special weight deals with the trial court's process of weighing the evidence.

■ We recognize that we generally presume trial courts know and follow the applicable law. *Thurman v. State,* 793 N.E.2d 318, 321 (Ind.Ct.App.2003). However, this presumption can be overcome if the trial court's findings lead us to conclude that an unjustifiable risk exists that the trial court did not follow the applicable law. *Cf. Alexander v. State,* 768 N.E.2d 971, 978 (Ind.Ct.App.2002), *aff'd on reh'g,* 772 N.E.2d 476, *trans. denied* (although appellate court presumes that trial court

follows applicable law, trial court's findings indicated that it failed to do so). Here, in addition to the trial court's failure to specifically identify the presumption that Timothy acted in L.R.'s best interest in denying visitation, the remainder of the trial court's findings give cause to worry that the trial court did not actually find that the Sodderses overcame this presumption.

First, the trial court's findings surprisingly contain no mention of the animosity between the Sodderses and Timothy. This absence is especially notable because:

> The ultimate question is whether visitation in the face of family discord is in the child's best interest. That question can only be answered by looking at the totality of the circumstances presented. While the relationship may, in any given case, be sufficient to make grandparent visitation in the child's best interest, notwithstanding the dissension between the parent and grandparent, it may not be sufficient to overcome the effects of the discord on the child in another.

*Daugherty v. Ritter,* 646 N.E.2d 66, 68 (Ind.Ct.App.1995), *adopted by* 652 N.E.2d 502 (Ind.1995).

■ Animosity between the parties is apparent from the record. The Sodderses have publicly accused Timothy of operating a RICO enterprise, stealing various items, and sexually abusing L.R. In response to these accusations, Timothy filed a libel suit, which was met with a threatening letter from Karl. Although Cheryl testified that it was a mistake to have filed the document accusing Timothy of the various crimes, at trial she testified that she still believes Timothy molested L.R. at some point. Cheryl's testimony also indicates that she still feels that Timothy

this presumption is rebuttable."). However, *Crafton* was decided before *McCune* and its progeny established the substantive require-

ment that the trial court specifically and individually identify these two concepts in its findings.

should not have attempted to obtain custody of L.R. after Brenda removed her from the State. Timothy testified that one of his principle concerns with allowing visitation was that the Sodderses would undermine his relationship with L.R. by saying derogatory things to L.R. about Timothy. Dr. Spencer also gave her professional opinion that hearing negative things from family members about Timothy would harm L.R.'s development. The failure of the trial court to address this evidence in its findings shakes our confidence that it actually afforded Timothy the presumption and found that the Sodderses had overcome it.

Second, although the trial court entered findings relating to the Sodderses' involvement in L.R.'s removal and disappearance, the trial court entered no findings as to how the Sodderses have alleviated the concern that they would once again facilitate a removal. Timothy certainly expressed concern at the hearing that L.R. would once again be removed, and indicated that this concern was the primary reason he was not permitting the Sodderses visitation with L.R. Again, the fact that the trial court's findings indicate the Sodderses facilitated L.R.'s disappearance and fail to present any indication of evidence that the Sodderses will not again facilitate a removal shakes our confidence in the trial court's decision.

■ The trial court's findings failed to articulate the proper burden of proof as required by *McCune*. Also, the findings and conclusions it did enter leave us with substantial concern as to whether the trial court properly assigned this burden of proof. The failure of a trial court to enter the required findings is "a defect in form, or procedural irregularity, which is capable of being cured." *Paternity of P.E.M.*, 818 N.E.2d at 37. When a trial court fails to issue specific findings in accordance with *McCune*, the order is voidable, and the remedy on appeal is a remand to the trial court instructing it to enter a proper order containing the required findings. *Id.* Therefore, we remand to the trial court with instructions to enter more specific findings and conclusions indicating that Timothy's decision to deny visitation is presumed to be in L.R.'s best interest, and as to whether the Sodderses introduced sufficient evidence to overcome this presumption.

### III. Unsupervised Visitation

Although we remand, we address Timothy's argument that the evidence does not support an order of unsupervised visitation, as this issue may recur. Although we cannot be sure whether the trial court properly applied the presumption in Timothy's favor, we can address this issue as the trial court's failure to apply the correct presumption could only have helped the Sodderses. *Cf. Harris v. Smith*, 752 N.E.2d 1283, 1289 n. 6 (Ind.Ct.App.2001) (noting that even if the trial court had failed to apply a statutory presumption in favor of a parent, the trial court still awarded custody to the parent, so any error would have favored the opposing party). Therefore we review the record to determine whether sufficient evidence exists to support the trial court's order of unsupervised visitation.

■ As discussed above, Timothy introduced substantial evidence relating to L.R.'s removal and the Sodderses' accusations against Timothy demonstrating the danger of unsupervised visitation. Dr. Spencer also gave her professional opinion that hearing negative things from family members about Timothy would harm L.R.'s development. Dr. Spencer testified that to alleviate these concerns, reunification should occur in a therapeutic setting. She also testified that another removal

such as happened before would be extremely detrimental to L.R.'s development. Although an order of supervised visitation would dispel most of the concerns relating to another removal or that the Sodderses would poison L.R.'s mind against Timothy, these concerns are clearly present with unsupervised visitation.

We recognize that the trial court's order indicates that the Sodderses must attend a session with Dr. Spencer, that the initial three visits between L.R. and the Sodderses should be supervised, and that Timothy has the right to be present at the following two visits. However, the trial court's order makes a leap of faith that following these few weeks, the concerns that the Sodderses will poison L.R.'s mind against Timothy or assist in another removal will be alleviated. We fail to find any evidence indicating that one session of counseling and three visits in a therapeutic setting can ensure L.R.'s safety or that her best interest will be served through unsupervised visitation with a couple who assisted Brenda in removing L.R. from Indiana in violation of a court order, filed documents in court accusing Timothy of various illegal and immoral activity, violated court orders relating to Timothy's property, and who still believe Timothy molested L.R.

In all, we conclude that insufficient evidence exists to support an order of unsupervised visitation. Timothy's concerns relating to allowing his daughter to spend unsupervised time with the Sodderses are completely legitimate. In the face of this evidence clearly indicating the potential dangers of unsupervised visitation, the trial court issued no findings supporting an order of unsupervised visitation, and we have found no evidence in the record that clearly supports such an order.[7]

This is not to say that unsupervised visitation between L.R. and the Sodderses would never be appropriate. A visitation schedule ordered by a trial court is not permanent; instead the trial court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." Ind. Code § 31–17–5–7. As we have previously noted, "[s]uch judicial oversight adequately protects the integrity of the family while promoting the welfare of the children." *Sightes v. Barker,* 684 N.E.2d 224, 231 (Ind.Ct.App.1997), *trans. denied.* It might very well be that after a period of supervised visitation, evidence of the Sodderses' behavior during these visitation periods, or a change in the relationship between the Sodderses and Timothy, would justify an order for supervised visitation. However, based on the record before us, the trial court's order granting unsupervised visitation was an abuse of discretion.

IV. Responsibility to Pay for Therapy

Timothy argues that the trial court abused its discretion in failing to indicate in its Order who bears the responsibility of paying for the court-ordered counseling session and therapeutic visits. Although the trial court's Order does not explicitly indicate that the Sodderses must pay for the counseling and therapeutic visits, the Order's language clearly indicates the trial court's intention that the Sodderses pay for these services. *Cf. Lawson v. Hayden,* 786 N.E.2d 756, 761 (Ind.Ct.App. 2003), *disapproved of on other grounds, Severs v. Severs,* 837 N.E.2d 498, 500 (Ind. 2005) ("Although the trial court did not explicitly state a conclusion that the disability benefits were marital property, the best interpretation of the language of the order indicates to us that such was its intention."). The Order states that the

7. We note again that the Sodderses did not file an appellate brief, and that therefore we have not undertaken the burden of developing arguments on their behalf.

Sodderses "shall schedule and complete a session with Dr. Susan Spencer in anticipation of therapeutic visits with [L.R.]," and that the Sodderses "shall have three (3) therapeutic visits with [L.R.] and Dr. Susan Spencer, with all therapeutic visits to be completed within six (6) weeks of the [Sodderses] initial session with Dr. Spencer. [Timothy] may be present for these visits if he chooses." Appellant's App. at 31–32. We find it implicit in the trial court's order that the Sodderses schedule and complete a session with Dr. Spencer that the Sodderses also pay Dr. Spencer for that session. Likewise, it is implicit that the Sodderses pay for the therapeutic sessions, which the Sodderses are required to attend, and Timothy may attend voluntarily. We conclude that the trial court's Order clearly indicates that the Sodderses bear the responsibility of paying for their counseling session and therapeutic visits with L.R.

### Conclusion

We conclude that the trial court's Order did not contain the requisite findings indicating that it applied the presumption that Timothy's decision to deny grandparent visitation was in L.R.'s best interest. We also conclude that the trial court abused its discretion in awarding unsupervised visitation. Finally, we conclude that the trial court's Order indicates that the Sodderses are required to pay for the counseling and therapeutic visits.

Reversed and remanded.

BAKER, C.J., and DARDEN, J., concur.