James M. HICKS, Appellant–Petitioner,

v.

Gary LARSON and Judy Larson, Appellees–Respondents.

No. 26A01–0707–CV–302.

Court of Appeals of Indiana.

April 10, 2008.

Steven L. Whitehead, Princeton, IN, Attorney for Appellant.

Conor O'Daniel, Foster & O'Daniel, LLP, Evansville, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Gary and Judy Larson filed in Gibson Circuit Court a petition for grandparent visitation. The Larsons ("Grandparents") are the maternal grandparents of the children of James Hicks ("Father"). Father objected to Grandparents' petition. The

trial court granted Grandparents' petition for visitation. Father appeals and argues that his due process rights were violated when the court ordered grandparent visitation over his objection, and the evidence does not support the court's finding that visitation is in the children's best interests. We reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Geri Hicks's ("Mother") and Father's marriage resulted in two children. Mother was diagnosed with terminal cancer shortly after the birth of their second child, K.H. Because Father suffered a severe work-related injury at the same time Mother was undergoing chemotherapy, Mother and the children resided with Grandparents for a significant period of time prior to Mother's death. Father continued to allow Grandparents to exercise regular visitation with the children after Mother's death.

Father married Cortni Hicks ("Stepmother") in June 2003, approximately one year after Mother's death. Father's relationship with Grandparents began to deteriorate at this time because Grandparents were upset about Father's marriage. Moreover, Grandparents were unhappy with Father's decision to place all photographs of Mother in photo albums, and with Father's request that Grandparents not take the children to visit Mother's grave or to a softball tournament held in her honor. Despite these disagreements, Father continued to allow Grandparents to have regular visitation with the children.

In January 2006, Stepmother overheard a conversation between K.H. and her cousin, in which K.H. stated that she watched Grandfather take a shower. Stepmother told K.H. not to go into the bathroom while Grandfather was showering. Father and Stepmother also learned that during overnight visitations, K.H. was sleeping with Grandfather in one bedroom while her sister was sleeping in another bedroom with Grandmother. Father informed Grandparents that he wanted the girls sleeping in a room together and Grandparents complied with that request.

On February 4, 2006, the children spent the night at Grandparents' home. The next day, Stepmother observed four-year-old K.H. in her bed with her underwear and pants pulled down touching herself in what Stepmother felt was an inappropriate manner. Stepmother had observed K.H. engaging in this behavior previously, and finally asked K.H. why she continued to do it. K.H. replied, "Pawpaw says Mimi played with her pee pee when she was little. And I can too." Tr. p. 75. K.H. then started shaking and said "No. Secret. Secret." Id. at 75–76.

Father and Stepmother called the Department of Family and Children ("the DFC") and case worker Ann Sulawske ("Sulawske") met with K.H. on February 6, 2006. After her interview with K.H., Sulawske concluded that K.H. had been touched inappropriately and in a sexual manner by Grandfather. Appellant's App. p. 151. The case was then referred to the Gibson County Sheriff's Department. Detective Deborah Borchelt ("Detective Borchelt") also interviewed K.H. K.H. told the detective that Grandfather "put his hand on her pee pee inside her panties," "that he moved his fingers up and down," and that "it hurt and tickled." Id. at 152. Detective Borchelt acknowledged that K.H.,'s statements were inconsistent. The Detective also interviewed K.H.'s sister who stated that she "had seen [K.H.] lie on the bed and [Grandfather] would rub her private area on top of her gown." Id. at 153.

Based on Sulawske's and Detective Borchelt's investigations, the DFC substantiated the claim of alleged molestation, Su-

lawske told Father and Stepmother that they "were not to allow the children to be in the presence of [Grandfather] since the claim had been substantiate[d]." Appellant's App. p. 151.

Upon completion of the molestation investigation, a Grand Jury was convened. In July 2006, the Grand Jury determined that there was not enough evidence to proceed with a criminal charge and it returned a No Bill against Grandfather. Father unsuccessfully sought to obtain a transcript of the grand jury proceedings.

On August 9, 2006, Grandparents filed a petition for visitation. After a hearing held on May 17, 2007, the trial court granted the petition. In its findings of fact and conclusions of law, the court found in part:

16. The evidence presented in this case establishes by clear and convincing evidence [that Grandfather] appropriately applied a cream or ointment medication upon the genital area of [K.H.] for treatment of a rash; that such conduct was not done knowingly or intentionally to arouse a sexual desire in [K.H.], approximately 4 years of age, the alleged victim or in himself to constitute a criminal action, a molestation or child abuse.

Appellant's App. p. 11. Further, the court concluded:

2. The grandparents have had a meaningful contact with the children of [Father] and the late [Mother]. The children had a meaningful relationship with [Grandparents] and the children enjoyed extensive visitation prior to the allege [sic] incident. Neither grandparent did any thing to legally harm the children.

3. It is in the best interest of [the children] to have a visitation relationship with [Grandparents].

4. The evidence is sufficient to rebut any presumption on behalf of the father[.]

Appellant's App. p. 13. Finally, the court concluded that Grandparents would be irreparably harmed if they were not allowed visitation with the children. Father now appeals.[1] Additional facts will be provided as necessary.

### Standard of Review

"On review from a trial court's order granting or denying grandparent visitation, we apply the familiar Ind. Trial Rule 52 standard, which provides that we may not set aside the findings or judgment unless clearly erroneous." *Megyese v. Woods,* 808 N.E.2d 1208, 1213 (Ind.Ct.App. 2004). First, we determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* "In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence to support the findings or the findings fail to support the judgment." *Id.* (citation omitted). We will not reweigh the evidence or the credibility of the witnesses. *Id.* Rather, we consider only the evidence most favorable to the trial court's judgment, with all reasonable inferences drawn in favor of the judgment. *Id.*

Moreover, we note that "a trial court considering a request for grandparent visitation must enter findings addressing: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent

---

1. Father filed a motion to stay execution of the court's order pending appeal. The trial court granted Father's motion.

has denied visitation or has simply limited visitation." *In re Guardianship of J.E.M.,* 870 N.E.2d 517, 520 (Ind.Ct.App.2007) (citing *McCune v. Frey,* 783 N.E.2d 752, 757 (Ind.Ct.App.2003)). "The trial court may also consider whether grandparents have had or have attempted to have meaningful contact with the child." *Ramsey v. Ramsey,* 863 N.E.2d 1232, 1238 (Ind.Ct.App. 2007) (citing Ind.Code § 31–17–5–2).

### Discussion and Decision

Father argues that the trial court "violated Father's fourteenth amendment right to substantive due process when it failed to acknowledge Father's fundamental right to make decisions regarding the care and custody of his children." Br. of Appellant at 12. Father also asserts that the trial court's conclusion that allowing Grandparents visitation with the children is in their best interest is not supported by the evidence.

Concerning grandparent visitation, our court has observed:

> [B]y enacting the Grandparent Visitation Act, [Indiana Code section 31–17–5–1 et seq.,] our General Assembly has recognized that a child's best interest is often served by developing and maintaining contact with his or her grandparents. However, grandparents do not have the legal rights or obligations of parents, and do not possess a constitutional liberty interest in visitation with their grandchildren. In contrast, parents do have a constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children. Furthermore, in our traditions and collective conscience, we have acknowledged that parents have the right to raise their children as they see fit. Therefore, when it drafted the Grandparent Visitation Act, our General Assembly had to balance two competing interests: the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren.
>
> Pursuant to the Act, a grandparent may seek visitation only if [ ] 1) the child's parent is deceased; 2) the child's parents are divorced; or 3) the child was born out of wedlock, but only if the child's father has established paternity. The trial court may grant a grandparent's petition for visitation if it determines that visitation is in the best interests of the child.

*Spaulding v. Williams,* 793 N.E.2d 252, 256–57 (Ind.Ct.App.2003) (quoting *McCune,* 783 N.E.2d at 755).

██ The "best interests" determination is a matter for the trial court's discretion, and we will reverse only upon a showing of an abuse of that discretion. *Ramsey,* 863 N.E.2d at 1237. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. *Id.* We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

██ Trial courts are to "presume that a fit parent's decision is in the best interests of the child" in deciding whether to grant or deny a grandparent's request for visitation. *Crafton v. Gibson,* 752 N.E.2d 78, 96 (Ind.Ct.App.2001) (citing *Troxel v. Granville,* 530 U.S. 57, 69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). Acting under this presumption, trial courts must give special weight to a parent's decision to deny or limit visitation. *Id.* at 96–97. However, the presumption is rebuttable. *Id.* at 97. Grandparents bear the burden of rebutting the presumption that Father's decision to

deny visitation was made in his children's best interests. *Id.*

 The trial court is not required to accept a parent's reasons for denying or restricting visitation with grandparents as necessarily true. *Spaulding*, 793 N.E.2d at 260. Moreover, the "special weight requirement does not require a trial court to take at face value any explanation given by a parent." *Id.* (internal quotations omitted). Rather, "the trial court in grandparent visitation matters must exercise the same duties it has in any other matter pending before it, namely, the duties of weighing the evidence and judging witness credibility." *Id.* "It is the trial court's prerogative to listen to the evidence and determine, in light of that evidence, whether a parent's alleged justification for denying or restricting visitation with grandparents holds water." *Id.*

We acknowledge that Grandparents played a significant role in the children's lives and exercised significant visitation with the children prior to the allegation of abuse. Moreover, the Grand Jury returned a No Bill against Grandfather and the criminal investigation ceased. Yet, the DFC substantiated the claim of molestation. While the DFC caseworker and the investigating detective conceded that K.H.'s statements were inconsistent, they concluded that K.H. had been touched inappropriately and in a sexual manner by Grandfather.

Despite the caseworker's and detective's testimony, the trial court found that K.H. developed a rash in "late 2004 or early 2005" "on her genital area." Further, the court found:

The petitioners discussed a treatment program and it was decided a cream would be applied to the area of the rash. [Grandmother] was occupied on other chores in the house and directed her husband to apply the cream. Using his fingers, he applied the cream to the affected area. [K.H.] responded that it tickled and hurt.

Appellant's App. p. 10. As a result of that finding, the court concluded:

The evidence presented in this case establishes by clear and convincing evidence [that Grandfather] appropriately applied a cream or ointment medication upon the genital area of [K.H.] for treatment of a rash; that such conduct was not done knowingly or intentionally to arouse a sexual desire in [K.H.], approximately 4 years of age, the alleged victim or in himself to constitute a criminal action, a molestation or child abuse.

Appellant's App. p. 11.

But these findings and conclusions by the trial court are not supported by the evidence. At the visitation hearing, Grandfather gave the following testimony:

COUNSEL: I think my question to you was, during the past eighteen months before February sixth of 06, did you have an occasion to touch [K.H.'s] genitals? And you said "no."

GRANDFATHER: I may or may not have.

COUNSEL: Okay. So now your answer is you may or may not?

GRANDFATHER: I don't know that. I can't remember back that far.

COUNSEL: Okay. If you would have done so, by your testimony, it would have been to what? Put some cream in that area?

GRANDFATHER: If she had a rash, yeah.

COUNSEL: Okay. Alright. Now, did you ever tell mom, or step-mom, or dad about a rash?

GRANDFATHER: No.

COUNSEL: Okay. So if this would be something that you would have done,

... you wouldn't have told mom or dad that she'd had a rash?

GRANDFATHER: It would have been done because my wife told me to.

COUNSEL: So it's possible, you yourself may have applied some ointment to [K.H.'s] genitals during the past eighteen months.

GRANDFATHER: Very possible.

Tr. p. 38.

Grandfather's testimony simply does not support the trial court's finding and conclusion. At most, Grandfather's testimony establishes that it is **possible** that he touched K.H.'s genital area to apply diaper rash cream. However, his statements do not support the trial court's conclusion under the clear and convincing evidence standard it cites that it is certain his only reason for touching K.H.'s genitals was to apply diaper rash cream. Therefore, the trial court's finding and conclusion in that regard are not supported by the evidence.

Whether Grandfather touched K.H. in an inappropriate and sexual manner is an issue that will likely never be resolved to Father's satisfaction. Regardless of whether K.H. was molested by Grandfather, Father's belief that the molestation occurred is not unreasonable. The DFC substantiated the claim of alleged child molestation after the DFC caseworker and investigating detective determined that K.H. had been touched in an inappropriate and sexual manner by Grandfather. Yet, the empanelled grand jury returned a no bill against Grandfather. In light of Father's reasonable concern that Grandfather has touched K.H. in an inappropriate manner, Father's belief that it is not in his children's best interests to have visitation with Grandparents is supported by the evidence.

Moreover, the parties concede that Father is a fit parent, and therefore, he is entitled to a presumption that his decision to deny visitation with Grandparents was made in the children's best interests. Because the DFC caseworker and investigating detective opined that K.H. was touched inappropriately and in a sexual manner by Grandfather, we conclude that Grandparents failed to rebut the presumption accorded to Father. For all of these reasons, we reverse the trial court's order awarding visitation to Grandparents.

Reversed and remanded for proceedings consistent with this opinion.

FRIEDLANDER, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

I respectfully dissent. The majority concludes that the evidence does not support the trial court's findings and conclusion that Grandfather touched K.H.'s genitals to apply a cream or ointment for treatment of a rash. I acknowledge that Grandfather's testimony was somewhat equivocal as to whether and under what circumstances he touched K.H.'s genitals. In addition to Grandfather's testimony, the trial court heard a statement K.H. gave to Deborah Borchelt, a Gibson County Sheriff's Department officer, in which K.H. stated, among other things, that Grandfather touched her "one time ... 'cause he put something there.'" Tr. at 55. Officer Borchelt concluded from her interview with K.H. that Grandfather had touched K.H. "only one time ... inside her panties with his fingers and he moved [ ]his fingers up and down and ... it tickled and hurt." Appellant's Appendix at 153. After meeting with K.H.'s step-mother, Ann Sulawske, a Gibson County Family and Children Services' worker, was of the opin-

ion that K.H. had been touched by Grandfather. Based on her own opinion of the facts and Officer Borchelt's conclusion, Sulawske "substantiated" the claim of sexual molestation. However, none of the evidence is inconsistent with the trial court's findings and conclusion. As the weighing of evidence and judging of credibility is a matter for the trial court to resolve, I would not dismiss the trial court's findings as unsupported.

The majority further concludes that Father's belief that Grandfather molested K.H. is not unreasonable. A presumption exists that a fit parent's decision is in the best interests of the children. *Magyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind.Ct.App. 2004). The presumption is rebuttable, however. *Id.* Here, the trial court, having heard all the evidence, determined that there was clear and convincing evidence that Grandfather did *not* molest K.H. and therefore Father's belief otherwise is unreasonable. It may be that, given Father's belief, a more structured visitation plan would have been in order; that is, supervised visits or some other limited means of keeping the children and Grandparents connected. My concern with the majority's statement is that it could give a parent almost carte blanche to deny grandparent visitation for any reason or no reason at all. The trial court, after listening to the testimony, concluded that the parent's reasons for denying visitation were unfounded and that awarding grandparents visitation with the children was in the children's best interests; thus, visitation in at least some form should be allowed.