**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANTS PRO SE:

**S.B.**
**J.B.**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF A.A. and L.A., | ) ) ) | |
| J.B. and S.B., | ) ) | |
| Appellants-Petitioners, | ) ) | |
| vs. | ) ) | No. 48A04-1304-AD-176 |
| R.C. and N.C., | ) ) | |
| Appellees-Intervenors. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1202-AD-11

**February 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

J.B. and S.B. (collectively "Adoptive Parents") appeal from the trial court's order granting R.C. and N.C.'s (collectively "Maternal Grandparents") request for grandparent visitation, raising jurisdictional issues, challenging the Maternal Grandparents' standing, and challenging the sufficiency of the trial court's findings and conclusion that grandparent visitation was in the best interests of A.A. and L.A.

We affirm.

## FACTS AND PROCEDURAL HISTORY

After M.A. murdered his wife, C.A., who was also the mother of their children, A.A. and L.A., J.B., M.A.'s half-brother, and S.B., J.B.'s significant other, took immediate custody of the children and filed a petition for guardianship over the persons and estate of the children. Both Maternal Grandparents, who were the adoptive parents of C.A., and the paternal grandmother consented to the guardianship. That guardianship petition was granted on July 3, 2008 by Judge Pancol, Judge of Madison Circuit Court, Division II, who presided in the matter. J.B. and S.B. later filed an adoption petition on February 21, 2012, which was assigned to Judge Thomas Newman Jr.'s court, Madison Circuit Court, Division III. Meanwhile, in Madison Circuit Court, Division II, Judge Pancol denied N.C. and R.C.'s request for specific grandparent visitation, but allowed them to intervene, noting that they had not filed a pleading seeking to gain grandparent visitation rights, but acknowledging that they may be entitled to seek to enforce those rights. In that same order, Judge Pancol noted that Judge Newman should proceed to hear J.B. and S.B's adoption petition then pending in his court as all guardianship issues had been decided.

2

On April 5, 2012, Maternal Grandparents objected to the adoption petition.[1] Later Adoptive Parents filed their response, a motion to strike, to the objection to their adoption petition. On April 18, 2012, Maternal Grandparents filed a new cause of action in Judge Newman's court seeking to establish grandparent visitation and asked that it be consolidated with the adoption petition by allowing them to intervene in that action. That request was granted, and on the day of the hearing on the adoption petition, Maternal Grandparents admitted that they lacked standing to intervene by way of objection to the adoption. The trial court allowed Maternal Grandparents to intervene nonetheless,[2] held the hearing, and took the matter under advisement.

On April 25, 2012, Judge Newman granted the Adoptive Parents's petition to adopt the children, specifically finding that the Adoptive Parents were fit parents and would only act in the children's best interests. In that same order, Judge Newman granted an order of visitation to the Maternal Grandparents. The Adoptive Parents filed a motion to correct error from the trial court's order. Judge Newman transferred the cause to Senior Judge Carl VanDorn.[3] Judge VanDorn held a hearing on the motion, issued a new order for visitation

---

[1] Indiana Code section 31-19-10-1(b) provides that a motion to contest an adoption must be filed thirty days after notice of the pending adoption petition. The Maternal Grandparents' objection was filed on April 5, 2012, and J.B.'s and S.B.'s adoption petition was filed on February 21, 2012.

[2] We review a trial court's ruling on a motion to intervene for an abuse of discretion. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 812 (Ind. 2012). A party may be granted permissive intervention upon a showing that the party's claim or defense and the main action have a question of law or fact in common. Ind. Trial rule 24(B). Timeliness is a discretionary determination that depends entirely upon the facts of the case at hand. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d at 815.

[3] Senior Judge VanDorn's order granting the paternal grandmother's petition for grandparent visitation was reversed in *In re Guardianship of AJA*, 991 N.E.2d 110 (Ind. 2013).

for the Maternal Grandparents, and remanded the case to Judge Newman for the entry of more detailed findings of fact and conclusions thereon. Ultimately, Judge Newman entered his order on March 11, 2013, finding again that the Adoptive Parents were fit parents and that they would only act in the best interests of the children. Also included within that order was the trial court's decision to grant the Maternal Grandparents specific visitation. The Adoptive Parents now appeal.

## DISCUSSION AND DECISION

### Standard of Review

The appropriate standard of review in appeals challenging the trial court's decision regarding a request for grandparent visitation is as follows:

> Because the Grandparent Visitation Act requires specific findings of fact and conclusions of law, Ind. Code §31–17–5–6, we apply the two-tiered Indiana Trial Rule 52 standard of review, *Megyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004). We first determine whether the evidence supports the findings, and then whether the findings support the judgment, *In re K.I.*, 903 N.E.2d 453, 457 (Ind. 2009). We set aside findings of fact only if they are "clearly erroneous," deferring to the trial court's superior opportunity "to judge the credibility of the witnesses." *K.I.*, 903 N.E.2d at 457, quoting T.R. 52(A). In turn, "[a] judgment is clearly erroneous when . . . the findings fail to support the judgment," or "when the trial court applies the wrong legal standard to properly found facts." *K.I.*, 903 N.E.2d at 457, citing *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005).

*In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013).

Additionally, Maternal Grandparents have not filed a brief in this matter. When appellees fail to submit a brief, we do not undertake the burden of developing arguments for them. *Abouhalkah v. Sharps*, 795 N.E.2d 488, 490 (Ind. Ct. App. 2003). We apply a less

4

stringent standard of review with respect to proposed showings of reversible error, and we may reverse the trial court's decision if the appellants can establish *prima facie* error. *Id.* *Prima facie* error, in this context, is defined as 'at first sight, on first appearance, or on the face of it.' *Id.* If the appellants are unable to meet that burden, we will affirm the trial court's decision.

Here the trial court found that it was in the best interest of A.A. and L.A. to have specific visitation with the Maternal Grandparents. Because of the potentially dispositive nature of the standing and jurisdictional issues, we address them first.

The Adoptive Parents contend that Maternal Grandparents lack standing to petition for grandparent visitation because S.B.'s petition for adoption of the children was granted. More specifically, they argue that because S.B. is not biologically related to the children in one of the ways enumerated in the survival-of-rights statute, Maternal Grandparents' standing to seek grandparent visitation rights was extinguished.

Indiana Code section 31-17-5-1(a)(1) provides in pertinent part that a child's grandparent may seek visitation rights if the child's parent is deceased. Maternal Grandparents are the grandparents of children whose parent is deceased as C.A. was Maternal Grandparents' adopted daughter. Additionally, Indiana Code section 31-17-5-9(2)(d) provides in pertinent part that a grandparent's visitation rights survive the adoption of children by a person who is biologically related to the children as an uncle. While it is true that S.B. does not meet any of the statutory criteria allowing for the survival of the Maternal Grandparents' visitation rights, S.B. is the life partner of J.B., who is related to the children

5

as their uncle, one of the statutory criteria allowing for the survival of the Maternal Grandparents' visitation rights. Although there is no statutory provision directly addressing the precise factual situation here, we can imagine a variety of scenarios involving unmarried individuals who are granted the adoption of children and a grandparent's visitation rights would be unaffected because one of the adoptive parents is biologically related as enumerated by statute. We do not agree with the Adoptive Parents that the trial court erred, and conclude that Maternal Grandparents had standing to seek visitation rights.

Next, Adoptive Parents challenge Judge Newman's authority to enter an order for grandparent visitation contending that Judge Pancol retained jurisdiction over the children. Although Adoptive Parents refer to Judge Pancol as Special Judge Pancol it is not entirely clear how this designation applies, since he is the regular judge of Madison Circuit Court, Division II, in which the guardianship matter was heard and decided. The way we see it, Judge Pancol merely noted that while he had the authority to allow Maternal Grandparents to intervene in the guardianship matter, he had no authority to rule on their assertion that they were entitled to enforce their grandparent visitation rights, as they had not filed the appropriate pleadings to properly bring the matter before the court. These comments in Judge Pancol's order merely acknowledged that the guardianship matter had come to its conclusion and acknowledged the pending adoption petition in another court in the same county.

Adoptive Parents further contend that Maternal Grandparents' request for specific grandparent visitation was barred by the doctrine of res judicata. As noted above, Judge

6

Pancol refused to rule on Maternal Grandparents' claim that they were entitled to enforce grandparent visitation rights because Maternal Grandparents had failed to file a pleading alleging as much in his court such that the matter was properly before the court. Grandparents were not denied visitation and filed no proper motion in the guardianship action. As such, Maternal Grandparents' claim was never decided on the merits by Judge Pancol.

The doctrine of res judicata prevents the repetitious litigation of disputes that are essentially the same. *Wright v. State*, 881 N.E.2d 1018, 1021 (Ind. Ct. App. 2008) (citing *Collins v. State*, 873 N.E.2d 149, 157 (Ind. Ct. App. 2007), *trans. denied* ), *trans. denied*. The principle of res judicata is divided into two branches: claim preclusion and issue preclusion. *Id*. at 1022. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* (citing *Afolabi v. Atlantic Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006)). Maternal Grandparents were not barred by res judicata from proceeding to enforce their grandparent visitation rights in Judge Newman's court.

The Adoptive Parents also challenge the trial court's findings of fact and conclusions thereon that granting Maternal Grandparents specific grandparent visitation with A.A. and L.A. was in the best interest of the children. The appropriate standard of review regarding this issue is as follows:

> On review from a trial court's order granting or denying grandparent visitation, we apply the familiar Ind. Trial Rule 52 standard, which provides that we may

7

not set aside the findings or judgment unless clearly erroneous. First, we determine whether the evidence supports the findings and then whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence to support the findings or the findings fail to support the judgment. We will not reweigh the evidence or the credibility of the witnesses. Rather, we consider only the evidence most favorable to the trial court's judgment, with all reasonable inferences drawn in favor of the judgment.

Moreover, we note that "a trial court considering a request for grandparent visitation must enter findings addressing: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation. The trial court may also consider whether grandparents have had or have attempted to have meaningful contact with the child.

*Hicks v. Larson*, 884 N.E.2d 869, 873-74 (Ind. Ct. App. 2008) (internal citations omitted).

Here, Judge Newman, in his March 11, 2013 order thoroughly and completely addressed the necessary considerations when entering the order granting Maternal Grandparents' visitation request. Judge Newman acknowledged the fitness of the Adoptive Parents and their suitability to act in the best interests of the children. The trial court also acknowledged that visitation had historically been achieved through compromise between the parties. Adoptive Parents were concerned that the entry of specific visitation would thwart their efforts to maintain a schedule for the children and that such an entry would be used by Maternal Grandparents as a weapon against them and their lifestyle. The trial court, however, recognized that grandparent visitation had been denied by Adoptive Parents and that such denial seemed unreasonable given the history of visitation prior to the adoption. Adoptive Parents's position could be summed up as a reluctance to have structured visitation

8

rights given to the Maternal Grandparents, more than a disagreement that visitation should occur at all.

We find that the trial court's findings are supported by the evidence and the findings, in turn, support the trial court's conclusion that grandparent visitation was in the best interests of A.A. and L.A.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.