## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 01 2018, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Angela Field Trapp
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Katherine E. Flood
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles C. Hopkins II, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Desiree D. Hopkins, <br> *Appellee-Respondent.* | October 1, 2018 <br><br> Court of Appeals Case No. <br> 18A-DR-202 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Gary L. Miller, Judge <br><br> The Honorable Deborah Shook, Magistrate <br><br> Trial Court Cause No. <br> 49D03-1107-DR-26645 |

**Altice, Judge.**

## Case Summary

[1]     In this post-dissolution matter, Charles Hopkins II (Father) filed a motion for contempt, and following a hearing, the trial court issued an order (January 2014

Contempt Order), finding Desiree D. Hopkins (Mother) in contempt and also modifying custody of the minor child from Mother to Father. Mother filed a motion to correct error, which the trial court granted in part by order (August 2014 Order). The August 2014 Order found that Mother was not in contempt, and, with regard to the previously-ordered custody modification, the trial court found that Father had not properly pled and sought a custody modification, such that Mother lacked notice, and it ordered the parties to participate in further proceedings regarding custody modification. Father filed among other things, an amended motion to modify custody, and after multiple hearings, the trial court issued findings and conclusions (April 2017 Order) denying Father's motion. He now appeals and raises three issues that we restate as:

I. Whether the matter of custody had already been determined in the August 2014 Order order such that it was error for the trial court to address it in the April 2017 Order;

II. Whether it was error for the trial court to consider the treatment records of the child's therapist that had been submitted directly to the court; and

III. Whether the trial court's findings of fact that concerned the child's treatment with the therapist were supported by the evidence.

[2] We affirm.

# Facts & Procedural History

[3] Mother and Father were married in 2004 or 2005[1] and are the biological parents of E.H. (Child), born in September 2004. In May 2011, Mother and Child relocated, with Father's knowledge, to northern Indiana. In July 2011, Father filed a petition for dissolution, which he served upon Mother at her North Judson, Indiana address, where she and Child lived briefly before moving in September or October 2011 to a residence in San Pierre, Indiana. In August 2011, the parties entered into a Separation Agreement. Among other things, the Separation Agreement provided that Mother would have primary physical custody of Child, with Father having parenting time pursuant to the Indiana Parenting Time Guidelines (Guidelines), and they would share joint legal custody. Father was aware of the location of Mother's residence when he signed the Separation Agreement. In April 2012, the trial court approved the Separation Agreement and issued a Decree of Dissolution incorporating the same.

[4] In September 2013, Father filed an Amended Verified Motion for Contempt for Violation of the Notice of Intent to Relocate Statute (Motion for Contempt), alleging that Mother: (1) had relocated to Northern Indiana without complying with the Relocation Statute; (2) was depriving him of parenting time; (3) was refusing to allow him to participate in medical decision-making for Child; and

---

[1] The Domestic Relations Counseling Bureau report reflects that the parties married "during 2005," and Mother's brief indicates that they married "at some point in 2004." *Pet'r's Ex.* 17; *Appellee's Brief* at 13.

(4) had failed to pay her portion of Child's uninsured medical expenses. The Motion for Contempt did not allege that there had been a substantial change in circumstances or that it would be in Child's best interest to modify custody, although the prayer for relief read:

> WHEREFORE, Father respectfully requests that this Court set this matter for a hearing *to review and modify the current custody order*, parenting time order, and child support order, for payment of Father's attorney fees, and to order Mother to consolidate the unpaid credit card debt into her own name; and for Mother to pay her portion of their daughter's uninsured medical expenses, and for all other just and proper relief in the premises.

*Appellant's Appendix Vol. II* at 39 (emphasis added).

[5] In November 2013, the trial court conducted a hearing on Father's Motion for Contempt. Father appeared in person and by counsel, and Mother appeared pro se. Among others to testify at the hearing were Father, Father's then-fiancée Rachel Burt, his aunt, his mother, and Mother's mother. Father testified, erroneously, that (1) the parties' marriage was dissolved in April 2011, when in fact it was dissolved in April 2012; and (2) that Mother had moved two and one-half hours away *after* the dissolution was finalized, when in fact she

moved weeks before Father filed his Petition for Dissolution. The trial court thereafter issued the January 2014 Contempt Order.[2]

[6]     The trial court made certain findings in the January 2014 Contempt Order, including: (1) Mother had moved "without proper Notice to Father" and her "unapproved relocation was a violation of Indiana Code 31-17-2.2-1" because she failed to provide Father with adequate notice and opportunity to object and that, as a result of the relocation, Father was denied a substantial amount of his parenting time; (2) Child was having difficulty making new friends at her new school and was having academic problems; (3) Mother's home "may not be a suitable living environment" due to clutter; and (4) Child often appeared not well cared for when she arrived to exercise parenting time with Father, "wearing worn out clothes and shoes" and "often has poor hygiene or smells like body odor." *Appellant's Appendix Vol. II* at 40-42. The trial court concluded that "it is not in the best interest of [Child] for her to remain in the custody and care of Mother" and ordered that Father be awarded primary physical custody of Child and that Mother would have parenting time pursuant to the Guidelines. *Id.* at 42. The trial court ordered Mother to "immediately transition" Child to live with Father when "school ends for [Child] on

---

[2] This order was titled "Findings of Fact & Conclusions of Law from Contempt Hearing on November 4, 2014," and we note that the copy of the order in the record before us is unsigned, but the Chronological Case Summary reflects that it was signed on January 27, 2014. *Appellant's Appendix Vol. II* at 43.

December 20, 2013."[3]  *Id*. at 43.  Some months after Father was awarded custody of Child, he initiated counseling for Child with Robert J. Coykendall, MSW, LCSW, who saw Child weekly or every other week from September 2014 through October 2016.

[7]  On February 6, 2014, Mother filed a Consolidated Verified Motion to Correct Errors and Verified Motion for Relief from Judgment (Motion to Correct Error) on the basis that she should not have been held in contempt for her relocation because she had relocated to northern Indiana approximately six weeks before Father filed his Petition for Dissolution and, consequently, Mother was under no obligation to comply with the relocation statute.  Mother asked the trial court to vacate the January 2014 Contempt Order, or modify it to reflect that Mother was not in contempt and to remove all portions that modified or addressed custody, parenting time, and child support, because Father had never filed a motion for modification of custody.  *Id*. at 49-50.  Father filed a response, asserting, in part:

> Although Father brought his contempt petition under the notice to relocated [sic] statute (I.C. 31-17-2.2-1), the Court's ruling was clearly based upon what was in the best interest of [Child] under the factors from I.C. 3l-17-2-8, which in turn renders Mother's [Motion to Correct Error] moot, and without merit.

---

[3] Although the order instructed Mother to transition Child to Father by December 20, 2013, the order was not issued until about a month later, on January 27, 2014.

*Appellant's Appendix Vol. II* at 60.  Thereafter, Mother filed a motion for the trial court to conduct an *in camera* interview of Child, to which Father objected.

[8]  The trial court conducted a hearing on Mother's Motion to Correct Error, at which both parties appeared in person and by counsel.  Following the hearing, the trial court issued the August 2014 Order.  As to the portion of the January 2014 Contempt Order that found Mother in contempt, the August 2014 Order found that (1) its January 2014 Contempt Order wrongly reflected the parties' date of final dissolution as April of 2011, rather than April 2012, and (2) Mother's relocation to northern Indiana was prior to the commencement of the dissolution action, and, therefore, Mother was under no obligation to comply with the requirements of the relocation statute.  As to the change in custody, the August 2014 Order determined that, although it had previously found that a change of custody was in Child's best interest, "Father's contempt motion did not assert a substantial change of circumstances" and, consequently, Mother "was not afforded the opportunity to prepare a response to the [custody] allegations that were raised at the [November 2013 contempt] hearing," as those allegations "had not been pled."  *Id*. at 64.  Therefore, the trial court ordered the parties to "re-plead, with specificity, what is in the child's best interest and any substantial and continuing change of circumstances that would warrant a change of custody."[4]  *Id*.

---

[4] In addition, the trial court ordered the parties to the Domestic Relations Counseling Bureau for evaluation, and it took the request for *in camera* interview under advisement.

[9] On September 18, 2014, Father filed a Motion to Modify Custody (Motion to Modify). He argued, among other things, that Mother had not provided Child with a suitable living environment, but he did not expressly allege that there had been a substantial change of circumstances. Believing that Father's Motion to Modify was both tardy and failed to allege a change in circumstances, Mother filed a Motion to Dismiss on September 29, 2014, which, according to Father, the trial court denied by summary order in November 2014.[5] In November 2014, Father filed an amended Motion to Modify. Mother maintained that although the amended Motion to Modify asserted complaints about her parenting and her home, it still failed to allege a substantial change in circumstances.

[10] The trial court held a hearing on pending motions,[6] over the course of five days, that commenced in January 2016, continued in April, July, and August, and concluded in September 2016. At each of the five days of hearings, both parties appeared in person and with counsel. Coykendall, Child's counselor, testified at the April 2016 hearing, but did not bring his notes or file to the hearing, so Mother by counsel subpoenaed his records. Coykendall did not comply,

---

[5] The order denying Mother's Motion to Dismiss that appears in Appellant's Appendix is signed but not dated. Father represents that the order was signed on November 12, 2014. However, Mother asserts that she did not ever receive any such order from the trial court, noting that the copy in Appellant's Appendix is both undated and unstamped and does not appear in the CCS, characterizing it as "incomplete, if not fabricated." *Appellee's Brief* at 19 n.2.

[6] The motions included: Mother's Motion to Correct Error, Father's Response thereto, Father's Motion to Modify Custody, Mother's Motion to Dismiss, Father's Amended Motion to Modify Custody, and Father's Motion to Strike.

asserting HIPAA concerns, and Father would not execute a release, which would allow Coykendall to speak with Mother about his counseling of Child.

[11] Mother sought trial court assistance with the production of the records, and following an attorneys' conference, the trial court issued an order in October 2016 (October 2016 Order) ordering Coykendall to release "all of his records regarding his counseling of the minor child, including his notes and any diagnostic impressions he has made over the course of his counseling [Child.]" *Appellant's Appendix Vol. II* at 90. The records were to be submitted directly to the trial court within fifteen days, and the trial court would mark them as confidential. On October 26, 2016, Coykendall submitted his counseling records to the trial court as directed. The October 2016 Order also ordered that Child was to undergo a mental health evaluation conducted by a PhD-level provider as chosen by the parties, to be completed within thirty days.

[12] On April 17, 2017, the trial court issued extensive Findings of Fact and Conclusions of Law (April 2017 Order), from which Father now appeals.[7] The April 2017 Order included the following determinations:

> 10. Father was aware of Mother's residential address at the time he signed the Separation Agreement in which he agreed to Mother's physical custody. He did not object to Mother's relocation at any time.

---

[7] We commend the trial court on the thoroughness of its Findings of Fact and Conclusions of Law, which greatly aided our appellate review.

12.  Father's 2013 Contempt Motion contained inaccurate assertions of fact and law[.]

\* \* \*

13.  Father did not in either his original 2013 Contempt Motion or his Amended 2013 Contempt Motion petition the Court for a modification of custody, assert that a substantial change in circumstances had occurred, or assert that it would be in the best interest of the Child that he receive custody of her. The only reference to modification at all is located . . . in a single line of his prayer for relief[.]

\* \* \*

17. The [January] 2014 Contempt Order contains several factual errors[.]

\* \* \*

19.  Mother's relocation did not violate the Relocation Statute, as she was under no duty to abide by it, because the divorce action had not yet been filed at the time of her move.  In addition Father did not actually request a modification of custody other than in his Wherefore paragraph/prayer for relief, there is no mention in Father's 2013 Contempt Motion of a request to modify custody, nor any assertion that a) there had been a substantial change in circumstances since the entry of the existing custody order, nor that b) it would be in the child's best interest to modify custody. *This was not pled, and was entered in error.*

\* \* \*

24. Father's 2013 Contempt Motion was somewhat misleading and confusing.

\* \* \*

26. As a result, *the previous Court made an error in entering a finding of contempt against Mother, and ordering a custody modification of the child.* Mother was denied Due Process.

\* \* \*

32. *This Court finds that because custody was erroneously given to Father, the burden of proof rests upon Father to demonstrate that he should have custody of the child.* In order to do so, Father would have to prove that there has been a substantial change in circumstances that would justify the modification he seeks, and that a modification would be in [Child]'s best interests.

\* \* \*

34. The Court finds that no substantial change in circumstances occurred after the Separation Agreement was entered, and that the previous Court's Order was erroneous.

\* \* \*

38. The Court finds that custody was erroneously given to Father in 2014, and Mother was not in contempt at the time the [January] 2014 Contempt Order was issued. The Court finds that Mother is entitled to relief as a result.

*Id.* at 92-101 (emphasis added). The trial court's April 2017 Order continued with numerous findings concerning its review of Coykendall's records that had been submitted directly to it. Those findings included:

41. Father did not seek Mother's input regarding the counseling and has consistently obstructed Mother's access to information regarding the counseling, including by filing a Motion to Quash a subpoena Mother's counsel had filed seeking the counseling records.

42. Coykendall's September 2014 initial assessment of [Child] was that she appeared anxious, and reported "increased irritability, frustration, and anger." She reported "feeling disconnected and missing her [M]other, younger brothers, and her [M]other's boyfriend." Coykendall diagnosed [Child] with adjustment disorder, and indicated that she struggled significantly to get along with Father's wife, Rachel.

* * *

44. Coykendall's therapy notes consistently reflect a troubled relationship between [Child] and her [F]ather, as well as between [Child] and her Stepmother. During sessions of play therapy [Child] repeatedly acted out violent behaviors against Father and Stepmother, including pretending to "shoot" Father over and over. [Child] has also acted out beating Stepmother about the head, poisoning her and feeding her to a shark. She has repeatedly expressed bitterness, anger and resentment toward Father and Stepmother. These interrelationships do not appear to have improved over the course of Coykendall's work with [Child].

* * *

47. Over the same period of time, the therapist repeatedly notes a close relationship and strong bond between [Child] and her family members at Mother's home (Mother, [Child's] two younger brothers, and Mother's boyfriend). The notes reflect that [Child] misses her Mother, brothers, and Mother's Boyfriend and discusses her sadness at being apart from them in nearly every single session.

48. Coykendall administered a set of mental health assessment tools to [Child] on two occasions, in order to assess her condition and whether progress had been made. The first set of assessments was administered on September 17, 2015. At that time, [Child] scored a "1" on the Burns Anxiety Inventory, which [Coykendall] interpreted as "not anxious" and a "27" on the Burns Depression Inventory, which he interpreted as "moderately depressed." When the tests were repeated eight months later, on May 17, 2016, [Child]'s anxiety score had increased to 10 (moderate anxiety) and – alarmingly – her depression inventory score had shot up to 62, which was interpreted by [] Coykendall as "severe" depression.

49. Coykendall's notes referenced Child's serious and prolonged difficulties in school[.]

* * *

52. [Child]'s grades are no better under Father's custody than they were under Mother's and they appear slightly worse.

* * *

57. Coykendall's records repeatedly noted [Child]'s difficulties while making and keeping friends in Father's community.

* * *

64. Coykendall's initial assessment of [Child] clearly indicated that [Child] had no history of mental health troubles prior to Father taking custody of her. . . . The evidence demonstrates that [Child]'s mental health has deteriorated since she was removed from Mother's custody, particularly in the areas of depression and anxiety.

*Id*. at 102-113. The trial court recognized that, following its *in camera* interview with Child, it held an attorneys' conference and "expressed certain concerns regarding [Child]'s mental and emotional health, and ordered a full psychological evaluation." *Id*. at 113. The trial court also found that "Father has a long history of lying in order to get people to like him, or to avoid conflict, or to get what he wants," and "Father [] has a history of inappropriate sexual behavior with adolescent girls." *Id*. at 114. The April 2017 Order denied Father's Motion to Modify and Amended Motion to Modify Custody, ordering that "[p]hysical custody of [Child] shall therefore be with Mother" and that the parties "shall share joint legal custody[.]" *Id*. at 118. Father now appeals.

## Discussion & Decision

### I. Scope of April 2017 Order

[13] Father contends that the trial court "committed fundamental error in the April 2017 Order granting primary physical custody of [Child] to Mother, based on Mother's Motion to Correct Error, which was already resolved by the August 2014 Order." *Appellant's Brief* at 11. Father's argument is that the August 2014

Order "held that Father presented sufficient evidence that it was in the Child's best interest for Father to have physical custody," and it thereby "resolved Mother's Motion to Correct Error," including custody matters, such that it was erroneous for the trial court to again address her Motion to Correct Error, in particular the custody matter, in April 2017. We disagree both with Father's characterization of the August 2014 Order and with his conclusion that the trial court was precluded from addressing custody in the April 2017 Order.

[14] Father's argument is premised on one finding in the August 2014 Order, which he takes out of context. The finding states:

> 5. However, based on the unrefuted evidence and testimony that was presented at the November 4, 201[3] hearing, the Court found a change of custody to be in the best interest of the child at that time.

*Appellant's Appendix Vol. II* at 64. That finding was not, as Father claims on appeal, a determination that Father having physical custody of Child was in her best interest. Rather, the finding was an explanation of why it had previously, and erroneously, modified custody after the November 2013 contempt hearing. That is, the August 2014 Order, when considered in its entirety, determined that "Father's Contempt Motion did not assert a substantial change in circumstances," and that, although its previous January 2014 Contempt Order had found that a change of custody was in Child's best interest "at the time," that custody determination was in error, because Mother "had not been afforded the opportunity to prepare a response to the [custody] allegations that

were raised at the hearing, as they had not been pled." *Id.* Therefore, to give Father another opportunity to properly and fully plead and raise his custody modification arguments, and to allow Mother to properly prepare and respond, the trial court ordered the parties "to re-plead, with specificity, what is in the child's best interests and any substantial and continuing change of circumstances that would warrant a change of custody." *Id.* Father thereafter filed a Motion to Modify Custody, which he later amended. The trial court held five hearings, spanning January 2016 to September 2016, at which it received evidence on, among other things, whether a change of custody was warranted. The trial court did not err in addressing custody in the April 2017 Order.

[15] Father also urges that Mother should have filed an appeal from the trial court's August 2014 Order, and, having failed to do so, she "waived her right to re-litigate the Motion to Correct Error[.]" *Appellant's Brief* at 15. Father's argument in that regard is premised on the assumption that the August 2014 Order found in Father's favor with regard to custody, and as we explained above, it did not do so. Indeed, Mother would have had no reason to appeal the August 2014 Order. The trial court's order agreed with her arguments in her Motion to Correct Error that (1) she should not be held in contempt for failing to comply with the relocation statute given that she was under no obligation to comply with it, since her relocation occurred before the dissolution; and (2) Father's Motion for Contempt had not sought a change in custody, other than to mention it in the prayer for relief clause, and,

accordingly, Mother had no notice of it being argued at the hearing on Father's Motion for Contempt. We therefore, reject Father's argument that Mother waived her right to litigate the custody issue.[8]

## II. Counselor's Records

[16] Father claims that the trial court erred because it relied on evidence "not entered into the record at trial." *Appellant's Brief* at 15. More specifically, he argues, "The [t]rial [c]ourt's April 2017 Order was based on information not in the record, including the mental health records of [Child], which were never introduced into evidence, and not available for review or cross-examination." *Id*. We find no error, however, with the trial court's review of and reliance on Coykendall's records.

[17] The crux of Father's argument is that the records were never admitted as evidence during any of the five days of evidentiary hearings held between January 2016 and September 2016. However, the record before us reflects that Mother was unable to obtain the records until October 2016, when the trial court ordered Coykendall to produce them. Specifically, the record reveals that, early in 2014, after being awarded custody in the January 2014 Contempt Order, Father unilaterally arranged the counseling for Child with Coykendall, who saw Child weekly or every other week over the course of approximately

---

[8] Father also suggests that the April 2017 Order erroneously granted Mother's Motion to Dismiss, which he claims had already been stricken from the record. We do not reach Father's argument, however, as the April 2017 Order did not grant Mother's Motion to Dismiss; it "[d]enied" Father's Motions to Modify Custody. *Appellant's Appendix Vol. II* at 118.

two years. Father did not execute a release to allow Mother to access the records. Coykendall testified at the April 2016 hearing, but he did not bring his notes or file to the hearing, and Mother then subpoenaed his records in May 2016. Asserting HIPAA concerns, Coykendall did not comply with the subpoena, and Father filed a motion to quash the subpoena. Mother thereafter sought the trial court's assistance for the production of the records, and in October 2016, the trial court ordered Coykendall to release "all of his records regarding his counseling of the minor child, including his notes and any diagnostic impressions he has made over the course of his counseling [Child]" and submit them directly to the trial court, where they would be marked as confidential. *Appellant's Appendix Vol. II* at 90. On October 26, 2016, Coykendall submitted his counseling records to the trial court. Under these circumstances, we reject Father's suggestion that the records should not have been considered by the trial court because they were not admitted at one of the five days of evidentiary hearings between January and September 2016.

[18] In urging us to reject Father's argument that the records were improperly considered by the trial court, Mother argues that (1) Coykendall's records "were part of the Court's record," and (2) Father had "had ample opportunity to . . . request a hearing for the purpose of cross-examining [] Coykendall with respect to those records." *Appellee's Brief* at 15, 19. We agree.

[19] As discussed above, Coykendall's records were submitted directly to the trial court in October 2016. That same month, the trial court ordered Child to undergo a complete psychological evaluation by a Pd.D.-level child

psychologist. The parties were not able to agree on an evaluator, and after a court-appointed psychologist declined due to workload, the trial court, in January 2017, appointed Dr. Warren Palmer to perform the evaluation. Dr. Palmer's report was provided to the trial court on February 9, 2017. Accordingly, as Mother argues, evidence did not close until after the submission of Dr. Palmer's evaluation report, which was almost six months after Coykendall's therapy records were provided to the court. Thus, the trial court did not rely on evidence outside of the court's record.

[20] Furthermore, Father had opportunity to review Coykendall's records and, if desired, request a hearing for purposes of cross-examining him. Ind. Code § 31-17-2-10 provides that trial courts in family and juvenile matters may consult with professionals. It provides:

> (a) The court may seek the advice of professional personnel even if the professional personnel are not employed on a regular basis by the court. The advice shall be given in writing and made available by the court to counsel upon request.

> (b) Counsel may call for cross-examination of any professional consulted by the court.

"The right to cross-examine witnesses under oath is a fundamental right which cannot be denied unless waived." *Theobald v. Theobald*, 804 N.E.2d 284, 286 (Ind. Ct. App. 2004).

[21] Here, Coykendall provided his records to the trial court in October 2016, and both parties were aware that the records had been provided to the trial court.

The records were thus available for review by counsel for months before the parties were to submit their findings and conclusions in April 2017. Father made no request to review Coykendall's records. *Compare Jendreas v. Jendreas*, 664 N.E.2d 367, 370 (Ind. Ct. App. 1996) (holding it was denial of due process for trial court to deny mother's request for a hearing to cross-examine court-ordered evaluator, who was unavailable to testify at final hearing), *trans. denied*. Father cannot now assert that he did not have the opportunity to review and cross-examine Coykendall about the records.[9]

[22] Lastly, as Mother points out, the record reflects the parties' awareness that the trial court intended to rely on the records. Specifically, after the trial court issued its April 2017 Order, Father filed a Motion to Correct error, and at the hearing on Father's Motion, the trial court reminded the parties:

> I made this very clear to both of you that I thought you both should review these records and that I thought you had the right to review those records. And I did so on the record, I'm fairly certain. Unless we did it after we were done and we were just discussing it informally. Or in my office. But I made it very clear to you that it was totally available for both of you to review.

*Trial Transcript Vol. IV* at 221-22. The trial court continued:

---

[9] Furthermore, we observe that, in this case, Father was the parent who arranged for Coykendall's counseling of Child, and he could have, at any time, accessed and reviewed the records.

They were available. The court has the right to seek the advice of a professional. The parties have the right to seek a copy of it. It's a statute. That's the way it works.

*Id.* at 231. We find no error with the trial court's review of and reliance on Coykendall's records in its April 2017 Order.

### III. *Trial Court's Findings Concerning Coykendall*

[23] In a related vein, Father argues that because Coykendall was deemed a skilled witness and not an expert witness,[10] he "was not allowed to testify as to the content of his therapeutic records," and because Coykendall "did not provide any context or analysis of his records," there was no evidence "to support the [t]rial [c]ourt's assessment of the value, meaning and interpretation" of Coykendall's therapy records. *Appellant's Brief* at 18-19. We reject Father's argument.

[24] We have already considered and rejected Father's argument that the trial court should not have considered Coykendall's records on the bases that they were outside of the record and that Father did not have a chance to cross-examine Coykendall about them. Father's present argument appears to be a different way of saying the same thing: that the trial court should not have considered the submitted treatment records. To the extent that Father's claim is that the

---

[10] Coykendall was not disclosed as a witness to Mother prior to the April 2016 hearing, but the trial court allowed him to testify over Mother's objection. Father sought to have Coykendall considered as an expert witness "based on his experience," but because he did not bring a resume or curriculum vitae, Mother objected. The trial court agreed, stating, "[W]e will show him as a skilled witness." *Transcript Vol. I* at 155.

trial court's findings of fact that concerned Coykendall's records were unsupported by the evidence, we again disagree with Father. The inquiry is not whether Coykendall's testimony at the April 2016 hearing supported the findings. It is whether the evidence, which included Coykendall's testimony *and* Coykendall's treatment records, which we have already determined were properly considered by the court, supported the findings.

[25] On appeal, this court "'shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A)). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *D.C. v. J.A.C.,* 977 N.E. 951, 954 (Ind. 2012); *Campbell v. Campbell*, 993 N.E.2d 205, 209 (Ind. Ct. App. 2013), *trans. denied*. To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Campbell*, 993 N.E.2d at 209. Our Supreme Court has reiterated that in family law matters, trial courts are afforded considerable deference. *D.C.*, 977 N.E.2d at 953.

[26] Here, the trial court issued extensive findings of fact based on Coykendall's testimony, his Treatment Summary,[11] and his counseling records with Child over a two-year span, which included progress notes and results of testing. The

---

[11] Coykendall's Treatment Summary was admitted without objection at the April 2016 hearing.

trial court's findings included that Child had not adjusted well to Father's home and community; her relationship with Father, and particularly her step-mother, was troubled, and included feelings of anger, bitterness, and resentment; her relationships with Mother and members of Mother's family were positive and she regularly and consistently expressed missing them; Child expressed a desire to return to living with Mother; and Child's mental health had worsened while in Father's care, with test scores indicating that she went from moderately depressed to severely depressed. The trial court's findings regarding Coykendall were supported by the evidence.[12]

[27] Judgment affirmed.

Brown, J. and Tavitas, J., concur.

---

[12] Father does not allege that any other of the trial court's findings, besides those regarding Coykendall, were unsupported by the evidence.